JOHN H. FINDLEY, No. 50495
E-mail: jhf@pacificlegal.org
PAUL J. BEARD II, No. 210563
E-mail: pjb@pacificlegal.org
DAMIEN M. SCHIFF, No. 235101
E-mail: dms@pacificlegal.org
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, California 95834
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARNUM TIMBER CO., a California limited partnership,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and STEPHEN L. JOHNSON, in his official capacity as Administrator of the Environmental Protection Agency,<br><br>    Defendants. | No. 3:08-cv-01988-WHA<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Complaint

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

**INTRODUCTION**

1. Plaintiff Barnum Timber Co. challenges the decision of Defendants United States Environmental Protection Agency and Stephen Johnson (collectively EPA) to retain Redwood Creek on the 2006 Clean Water Act (CWA), 33 U.S.C. § 1251, *et seq.*, Section 303(d) list of water quality impaired streams and segments, as impaired by sediment and by temperature, and to confirm a total maximum daily load of pollutants for temperature for Redwood Creek. EPA's actions are arbitrary and capricious, and are not supported by substantial evidence in the record. Barnum's civil action, brought under the Administrative Procedure Act (APA), 5 U.S.C. § 551, *et seq.*, seeks a declaration from this Court that (1) Redwood Creek is not an impaired waterbody because it continues to support healthy and viable salmonid populations, (2) Redwood Creek is not impaired by sediment; and (3) Redwood Creek is not impaired by temperature. Further, Barnum seeks an injunction from this Court (1) directing EPA to remove Redwood Creek from the Section 303(d) list of impaired water bodies, and (2) enjoining EPA from enforcing any total maximum daily load of pollutants for Redwood Creek, or any other limitation otherwise attendant upon Redwood Creek's listing under Section 303(d).

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief); and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA).

3. Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue in this judicial district also is proper under 28 U.S.C. § 1391(e)(3), because Barnum's principal place of business is in this district.

**PARTIES**

4. Plaintiff BARNUM TIMBER CO. is a limited partnership organized under the laws of the State of California, doing business in Humboldt County, with C. Robert Barnum as its general partner. Barnum is a family-owned enterprise that owns and operates substantial

Complaint
- 1 -

1  nonindustrial timberlands and rangelands in Northern California, primarily in Humboldt County
2  and the Redwood Creek watershed. Barnum conducts timber harvesting operations and has been
3  suffering depreciated land values and unnecessary increased costs and harvest restrictions as a
4  consequence of the past listing of Redwood Creek as a water quality limited segment and will
5  continue to experience these injuries due to EPA's 2006 decision to retain Redwood Creek on the
6  Section 303(d) list of impaired water bodies as impaired by sediment and temperature, and its
7  enforcement of total maximum daily loads of pollutants for Redwood Creek. Barnum participated
8  and submitted evidence at hearings before the California State Water Resources Control Board
9  (State Water Board) and the North Coast Regional Water Quality Control Board (North Coast
10 Board) in 2002. It re-introduced and incorporated by reference all of this information and
11 testimony in the 2006 hearing process, and provided additional testimony and information.

12    5.    Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
13 (EPA) is an agency of the United States established pursuant to Reorganization Plan No. 3 of 1970,
14 84 Stat. 2086. It is the agency with primary responsibility for the enforcement of the CWA,
15 including the maintenance of the Section 303(d) list of impaired waterbodies.

16    6.    Defendant STEPHEN L. JOHNSON is the Administrator of EPA, and oversees
17 EPA's enforcement of the CWA. He is sued in his official capacity only.

18                **LEGAL AND PROCEDURAL BACKGROUND**

19    7.    Section 303(d), 33 U.S.C. § 1313(d), of the CWA requires all states to identify
20 water bodies that have not been able to meet state-established and federally approved water-quality
21 standards. Each waterbody segment that fails to meet these requirements is referred to as impaired
22 by a particular pollutant. States must also limit effluent discharges from point sources into water
23 bodies in order to achieve water quality standards. *See id.* § 1311(b)(1)(A). Water bodies must
24 be placed on the Section 303(d) list if the effluent controls on those water bodies are not stringent
25 enough to meet water quality standards. *See id.* § 1313(d). Once a state's proposed list is
26 completed, the state must submit it to the EPA, which may either approve or disapprove it, in
27 whole or in part. *See* 40 C.F.R. § 130.7(d)(1). EPA has 30 days to complete its review. *See id.*
28 § 130.7(d)(2).

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1    8.   Listing a water body as impaired under Section 303(d) requires the state (or the
2 EPA) to develop total maximum daily loads (or "TMDLs") for each pollutant by which the water
3 body is impaired. *See* 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(b)(1) & (c) (2007). A TMDL
4 is a written assessment of water-quality problems and contributing pollutant sources. It establishes
5 limits on the amount of each pollutant that may be introduced into the water each day, provides
6 a plan for meeting those limits, and places restrictions on activities in the watershed. *See* 40 C.F.R.
7 § 130.2(i) (2007).

8    9.   The TMDL limits are set in accordance with the impairment determinations made
9 during the Section 303(d) process. *See* 40 C.F.R. § 130.7(a) (2007).

10   10.   Redwood Creek is a forested watershed located near Eureka in northwestern
11 California.

12   11.   When the State of California did not include Redwood Creek in its 1992 list of
13 impaired water bodies, EPA added it to the Section 303(d) list on the basis of its determination that
14 anadromous fish populations (salmonids) in Redwood Creek had experienced significant declines
15 as a result of fishery habitat degradation caused by excessive sediment loading (impairment by
16 sediment).

17   12.   During 2002, the State Water Board also considered proposing Redwood Creek for
18 listing as "impaired by temperature" on the basis that anadromous fish populations in Redwood
19 Creek had experienced significant declines as a result of excessive creek temperature.

20   13.   On February 4, 2003, the State Water Board made a final decision to propose
21 Redwood Creek for listing on the 303(d) list for impairment by both sediment and temperature,
22 which EPA subsequently approved. On November 30, 2006, at the conclusion of the scheduled
23 4-year review of the Section 303(d) listing, EPA affirmed that Redwood Creek remains a
24 waterbody impaired by sediment and temperature.

25   14.   For both the temperature and sediment listings, EPA determined that Redwood
26 Creek's impairment arises because it does not currently host a fish population consistent with that
27 which it historically and naturally supported.
28 ///

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

Complaint
- 3 -

15. EPA also adopted the State Water Board's method for "determining" that Redwood Creek is impaired by temperature. The State Water Board used a threshold Maximum Weekly Average Temperature (average threshold) of 14.8 degrees Celsius for all of Redwood Creek and for all northern California streams. This average threshold was established by considering laboratory-perfect growth conditions for coho salmon; it is wholly inapplicable to a determination of the unpolluted, natural temperatures that could or should be achieved in California waters under natural and appropriate local conditions. The source relied upon by the State Water Board to justify the average threshold fails to support either the specific 14.8 blanket average threshold or *any* blanket average threshold—either for an entire region or even for all segments of a single stream. The author of the study testified *in person* to explain the State Water Board's misuse of her research.

16. With respect to sediment, EPA relied, for its relisting decisions, primarily upon the fact that Redwood Creek had not met the standards set by EPA in its 1998 TMDL Report. A review of that Report reveals that in making the impairment listing and setting the TMDLs, EPA used an unproved assumption: that the sediment condition currently exhibited by Redwood Creek is unique—as the result of 1964 flooding that followed clear-cutting activities, and other human-driven activities in the years thereafter—rather than a natural exhibition of Redwood Creek's normal sedimentation cycle. Thus, EPA merely assumed the central question of the impairment determination—that Redwood Creek is in fact polluted. The EPA then relied on this circular logic as the basis of its Section 303(d) relisting determinations.

17. Barnum filed a lawsuit in March, 2003, in California Superior Court, challenging the State Water Board's decision to propose Redwood Creek for listing as an impaired waterbody. Following a prolonged dispute over the administrative record, and abortive attempts at substantive briefing, the State Water Board moved to dismiss on the grounds that Barnum cannot obtain the relief it seeks without EPA's joinder as a party, which can be effected only in federal court. The superior court, in a decision entered March 17, 2008, agreed with the State Water Board and dismissed Barnum's state action without prejudice to Barnum pursuing relief against EPA in federal court.

Complaint

- 4 -

**FACTUAL ALLEGATIONS**

18. Redwood Creek was placed on the Section 303(d) list as a water body impaired by sediment in 1992. The listing was not based on site-specific studies and rested on little more than conjecture, opinion, and rumor. The Creek has remained on the list as impaired by sediment since that time.

19. The states, with EPA's approval, must reassess the status of their Section 303(d) impaired water bodies every four years.

20. As part of that obligation, the State of California began reviewing its list in 2001. Each of the regional water quality control boards in the state was responsible for gathering evidence, holding hearings, and making recommendations for inclusions on the list of water segments within their respective regions. In September, 2001, as a result of recommendations from its staff, the North Coast Board issued a Public Review Draft Report of waters in the North Coast region that the North Coast Board considered impaired. After public comment and submission of a variety of information into the record before, during, and after public hearings held by the North Coast Board, the North Coast Board finalized its recommendations in November, 2001. The North Coast Board then forwarded its recommendations to the State Water Board for review and finalization. Those recommendations were based on a number of faulty assumptions, determinations, and thresholds.

21. Because of its concern with the factual basis for Redwood Creek's 1992 listing as a water segment impaired by sediment, and the Creek's 2002 and 2006 listings as a water segment also impaired by temperature, Barnum has invested extensive time, money, and effort to gather all available sources of credible information regarding the condition of Redwood Creek.

22. Barnum participated fully in the public-hearing process by providing both the State Water Board and the North Coast Board with a substantial library of information it collected on the condition of Redwood Creek and by submitting its testimony for the record.

23. Among other items, Barnum provided a scientific report, *A Study in Change: Redwood Creek and Salmon*, which was reviewed and approved as accurate by technical editors Steve Mader and Ann Hovland. The report compiles information and data from published

1  literature, collects over 200 photographs of the creek (ranging from the 1800s), and includes over
2  500 sources of information. The report represents the most comprehensive collection of data
3  regarding Redwood Creek.

4      24. Barnum also submitted the raw evidence supporting its studies, including two years
5  of data from a fish population census taken with a rotary screw trap in Redwood Creek. The data
6  show that the quality of habitat is sufficient to support young salmonids at levels fully consistent
7  with strong, healthy, and natural production levels of streams with Redwood Creek's
8  characteristics. This evidence indicates that Redwood Creek's sedimentation and temperature
9  levels are consistent with historical levels and that the Creek is in as good a condition now as it
10 was before modern human interaction with the Creek.

11     25. Dr. Donald Chapman, one of the nation's leading experts on salmonids, reviewed
12 these submissions and all available information regarding the condition of Redwood Creek. Based
13 on this review and his personal inspection of conditions in Redwood Creek, he concluded in a
14 letter to the state during the public-comment process that an objective review of the available
15 information does not support the conclusion that Redwood Creek is impaired by sediment. He also
16 concluded that the recent production rates of salmonids from Redwood Creek are among the
17 highest recorded for streams along the Pacific coast.

18     26. Despite this comprehensive submission of detailed, scientifically sound, and
19 dispositive information regarding Redwood Creek's status and the return and record out-migration
20 of salmonids, the North Coast Board recommended retaining Redwood Creek as impaired by
21 sediment and listing Redwood Creek as impaired by temperature.

22     27. The State Water Board held hearings, accepted the North Coast Board's
23 recommendations, and proposed Redwood Creek for listing as impaired by both sediment and
24 temperature despite Barnum's further participation and extensive public comment before the State
25 Water Board. The State Water Board formally adopted the 2002 proposed Section 303(d) list of
26 water quality limited segments at a February 4, 2003, board meeting.

27     28. In its decision to propose Redwood Creek for listing as impaired by sedimentation
28 and siltation, the State Water Board identified the sources of excessive sedimentation as Riparian

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

Complaint
- 6 -

Range Grazing, Silviculture, Harvesting, Restoration, Residue Management, Logging Road Construction and Maintenance, Construction and Land Development, Disturbed Sites from Land Development, Removal of Riparian Vegetation, Streambank Modification and Destabilization, Erosion/Siltation, and Natural Sources.

29. In its decision to propose Redwood Creek for listing as impaired by temperature, the State Water Board identified the sources of excessive temperature as Logging Road Construction and Maintenance, Removal of Riparian Vegetation, Streambank Modification/Destabilization, Erosion and Siltation, Natural Sources, and Nonpoint Sources.

30. The State Water Board asserted that these sources of pollution impair Redwood Creek's beneficial use as cold freshwater habitat for spawning, reproduction, and/or early development of rare, threatened, or endangered species, namely salmon.

31. During 2006, the State Water Board conducted its four-year review of its Section 303(d) listings.

32. Barnum participated in this 2006 process as well, re-incorporating all of the submissions it had made during the 2002 process and submitting additional evidence further demonstrating that Redwood Creek's salmonid habitats, sediment levels, and temperatures were appropriate for Redwood Creek's natural conditions; and that the metrics, methods and/or data employed by the State Water Board to reach the conclusion that Redwood Creek was impaired by sediment and/or temperature were irreparably flawed.

33. On October 25, 2006, the State Water Board adopted its 2006 proposed Section 303(d) listings. In the 2006 proposed list the State Water Board again listed Redwood Creek as impaired by sediment and by temperature. These listings were materially identical to the listings made in 2002 and described above. (The listing for impairment by sediment was placed in the "water quality limited segments being addressed category" because the State Water Board recognized TMDLs for sediment for Redwood Creek in 2004. *See infra* ¶ 36.)

34. The State Water Board thereupon sent the list to EPA for approval pursuant to 40 C.F.R. § 130.30 (2002).

///

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111  FAX (916) 419-7747

35. On November 30, 2006, EPA adopted the State Water Board's findings and recommendations, and confirmed Redwood Creek's Section 303(d) listing as a water body impaired by sediment and temperature.

36. Prior to the 2006 listing, EPA had approved a TMDL for sediment in Redwood Creek. The North Coast Board has drafted an implementation plan for that TMDL. The TMDL limits for sediment for Redwood Creek are set in accordance with the EPA's and the State Water Board's erroneous Section 303(d) process conclusions that Redwood Creek has suffered substantial diminishment of natural salmonid populations during the last 40+ years as a result of radically increased and abnormal sediment loads.

37. The TMDL for temperature for Redwood Creek has not yet been established.

## INJUNCTIVE RELIEF ALLEGATIONS

38. Barnum hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 37 as though fully set forth herein.

39. If an injunction does not issue enjoining Defendants from enforcing the Section 303(d) listing for Redwood Creek, Barnum will be irreparably harmed. Barnum is presently and continuously injured by the Section 303(d) listing and will be further injured by the development and implementation of TMDLs because it will be forced to alter its land management practices and will be subjected to severe restrictions on the use of its land. Specifically, as a result of these listings, Barnum incurs substantial extra costs in managing its lands, and the listings diminish the available uses of that land. Barnum's property in the Redwood Creek watershed has already lost value because of the inclusion of Redwood Creek on the Section 303(d) list as impaired by sediment and by temperature. The development and implementation of TMDLs will cause additional injury. Barnum is injured by the implementation of the TMDL already established for sediment and by the development and future implementation of a TMDL for temperature; these TMDLs are certain to reduce the value of Barnum's property.

40. Barnum has no plain, speedy, and adequate remedy at law.

41. If not enjoined by this Court, Defendants will continue to enforce or rely on Redwood Creek's Section 303(d) listing in derogation of Barnum's rights.

Complaint
- 8 -

42. Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

43. Barnum hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 42 as though fully set forth herein.

44. An actual and substantial controversy exists between Barnum and Defendants over Defendants' failure to comply with the CWA and the APA in determining that Redwood Creek is a waterbody impaired by sediment and temperature and therefore merits placement on the Section 303(d) list of impaired water bodies.

45. This case is presently justiciable because Defendants' failure to comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to Barnum.  Barnum's timber business in the Redwood Creek watershed is injured by Redwood Creek's continuing designation as impaired by sediment and temperature on the Section 303(d) list.  Specifically, as a result of these listings, Barnum incurs substantial extra costs in managing its lands, and the listings diminish the available uses of that land.  Barnum's property in the Redwood Creek watershed has already lost value because of the inclusion of Redwood Creek on the Section 303(d) list as impaired by sediment and by temperature.  The development and implementation of TMDLs will cause additional injury.  Barnum is injured by the implementation of the TMDL already established for sediment and by the development and future implementation of a TMDL for temperature; these TMDLs are certain to reduce the value of Barnum's property.

46. Declaratory relief is, therefore, appropriate to resolve this controversy.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**EPA's Improper Inclusion of Redwood Creek on Its
2006 303(d) List as Impaired, and EPA's Treatment of
Redwood Creek for Any Purpose as Impaired, Are Arbitrary and
Capricious, and Are Not Supported by Substantial Evidence
(Violation of 33 U.S.C. § 1313(d) & 5 U.S.C. § 706)**

47. Barnum hereby incorporates by reference the allegations of Paragraphs 1 through 46.

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

48. EPA is under a clear and present duty to list, and to enforce TMDLs for, only those waters for which there has been submitted to the record sufficient competent evidence of impairment of a beneficial use. *See* 33 U.S.C. § 1313(d)(2); 5 U.S.C. § 706(2)(A) & (E).

49. Barnum has a clear, present, legal right to EPA's performance of its duty. *See* 5 U.S.C. §§ 702, 704.

50. EPA acted arbitrarily and capriciously, and contrary to law, by retaining Redwood Creek on the Section 303(d) list of impaired water bodies as impaired on the grounds that Redwood Creek does not currently host a fish population consistent with that which it historically and naturally supported.

51. EPA's decision to retain Redwood Creek on the Section 303(d) list of impaired water bodies as impaired owing to decreased fish populations is a final agency action.

52. EPA's decision to retain Redwood Creek on the Section 303(d) list of impaired water bodies as impaired owing to decreased fish populations must be vacated, because it is arbitrary and capricious, and not supported by substantial evidence. *See* 5 U.S.C. § 706(2)(A) & (E).

53. Barnum participated at all levels of the Section 303(d) listing process and has exhausted its administrative remedies. There are no further administrative avenues of relief open to Barnum.

54. All other forms of relief are unavailable or inadequate.

55. Barnum will suffer irreparable harm if the relief is not granted because of the uncertainty that will surround its operations, the conditions imposed in its timber harvest plans, and its added costs of land management in the area due to the retention of Redwood Creek on the 2006 Section 303(d) list of water quality limited segments as impaired by sediment, and the enforcement of a TMDL for sediment.

56. EPA's retention of Redwood Creek as a water body impaired because of decreased fish populations is, therefore, arbitrary and capricious, and not supported by substantial evidence, in violation of the APA. *See* 5 U.S.C. § 706(2)(A) & (E).

///

**SECOND CLAIM FOR RELIEF**

**EPA's Improper Inclusion of Redwood Creek on Its
2006 Section 303(d) List as Impaired by Sediment, and EPA's
Treatment of Redwood Creek for Any Purpose as so Impaired,
Are Arbitrary and Capricious, and Are Not Supported by Substantial Evidence
(Violation of 33 U.S.C. § 1313(d) & 5 U.S.C. § 706)**

57. Barnum hereby incorporates by reference the allegations of Paragraphs 1 through 56.

58. EPA is under a clear and present duty to list, and to enforce TMDLs for, only those waters, and for only those sources of pollution, for which there has been submitted to the record sufficient competent evidence of impairment of a beneficial use. *See* 33 U.S.C. § 1313(d)(2); 5 U.S.C. § 706(2)(A) & (E).

59. Barnum has a clear, present, legal right to EPA's performance of its duty. *See* 5 U.S.C. §§ 702, 704.

60. EPA acted arbitrarily and capriciously, and contrary to law, by retaining Redwood Creek on the Section 303(d) list of impaired water bodies as impaired by sediment, and by retaining the TMDL for sediment for Redwood Creek.

61. EPA's decision to retain Redwood Creek on the Section 303(d) list of impaired water bodies as impaired by sediment, and to retain the TMDL for sediment for Redwood Creek, is a final agency action.

62. EPA's decision to retain Redwood Creek on the Section 303(d) list of impaired water bodies as impaired by sediment, and to retain the TMDL for sediment for Redwood Creek, must be vacated, because it is arbitrary and capricious, and not supported by substantial evidence. *See* 5 U.S.C. § 706(2)(A) & (E).

63. Barnum participated at all levels of the Section 303(d) listing process and has exhausted its administrative remedies. There are no further administrative avenues of relief open to Barnum.

64. All other forms of relief are unavailable or inadequate.

65. Barnum will suffer irreparable harm if the relief is not granted because of the uncertainty that will surround its operations, the conditions imposed in its timber harvest plans, and

1   its added costs of land management in the area due to the retention of Redwood Creek on the 2006

2   Section 303(d) list of water quality limited segments as impaired by sediment, and the enforcement

3   of a TMDL for sediment.

4         66.    EPA's retention of Redwood Creek as a water body impaired by sediment, and of

5   the TMDL for sediment established for Redwood Creek as part of its Section 303(d) listing, is,

6   therefore, arbitrary and capricious, and not supported by substantial evidence, in violation of the

7   APA. *See* 5 U.S.C. § 706(2)(A) & (E).

8   **THIRD CLAIM FOR RELIEF**

9   **EPA's Improper Inclusion of Redwood Creek on Its
10  2006 303(d) List as Impaired by Temperature, and EPA's Treatment
    of Redwood Creek for Any Purpose as so Impaired, Are
11  Arbitrary and Capricious, and Are Not Supported by Substantial Evidence
    (Violation of 33 U.S.C. § 1313(d) & 5 U.S.C. § 706)**

12        67.    Barnum hereby incorporates by reference the allegations of Paragraphs 1 through

13  66.

14        68.    EPA is under a clear and present duty to list, and to enforce TMDLs for, only those

15  waters, and for only those sources of pollution, for which there has been submitted to the record

16  sufficient competent evidence of impairment of a beneficial use. *See* 33 U.S.C. § 1313(d)(2);

17  5 U.S.C. § 706(2)(A) & (E).

18        69.    Barnum has a clear, present, legal right to EPA's performance of its duty.

19  *See* 5 U.S.C. §§ 702, 704.

20        70.    EPA acted arbitrarily and capriciously, and contrary to law, by retaining Redwood

21  Creek on the Section 303(d) list of impaired water bodies as impaired by temperature, and by

22  taking any action consistent with the development of a TMDL for temperature for Redwood Creek.

23        71.    EPA's decision to retain Redwood Creek on the Section 303(d) list of impaired

24  water bodies as impaired by temperature is a final agency action.

25        72.    EPA's decision to retain Redwood Creek on the Section 303(d) list of impaired

26  water bodies as impaired by temperature, and any action consistent with the development of a

27  TMDL for temperature for Redwood Creek, must be vacated, because they are arbitrary and

28  capricious, and not supported by substantial evidence. *See* 5 U.S.C. § 706(2)(A) & (E).

Complaint

- 12 -

73. Barnum participated at all levels of the Section 303(d) listing process and has exhausted its administrative remedies. There are no further administrative avenues of relief open to Barnum.

74. All other forms of relief are unavailable or inadequate.

75. Barnum will suffer irreparable harm if the relief is not granted because of the uncertainty that will surround its operations, the conditions imposed in its timber harvest plans, and its added costs of land management in the area due to the retention of Redwood Creek on the 2006 Section 303(d) list of water quality limited segments as impaired by temperature, and the development of a TMDL for temperature.

76. EPA's listing of Redwood Creek as a water body impaired by temperature is, therefore, arbitrary and capricious, and not supported by substantial evidence, in violation of the APA. *See* 5 U.S.C. § 706(2)(A) & (E).

**PRAYER FOR RELIEF**

Wherefore, Barnum prays for judgment as follows:

As to the First Claim for Relief:

1. A declaration that EPA's determination, under 33 U.S.C. § 1313(d), that Redwood Creek is an impaired water body owing to decreased fish populations, violates the CWA and the APA, because Redwood Creek continues to maintain healthy and viable fish populations on a par with historical levels.

As to the Second Claim for Relief:

2. A declaration that EPA's determination, under 33 U.S.C. § 1313(d), that Redwood Creek is a water body impaired by sediment, violates the CWA and the APA, because Redwood Creek is not so impaired.

As to the Third Claim for Relief:

3. A declaration that EPA's determination, under 33 U.S.C. § 1313(d), that Redwood Creek is a water body impaired by temperature, violates the CWA and the APA, because Redwood Creek is not so impaired.

///

As to all Claims for Relief:

4. That this Court permanently enjoin Defendants from enforcing, threatening to enforce, or otherwise giving effect to the EPA's determination that Redwood Creek is a water body impaired by sediment and temperature or to any TMDL established or in development by virtue of Redwood Creek's listing as an impaired water body, and that this Court vacate EPA's listing.

5. For an award of attorneys' fees, expenses, and costs; and,

6. For such other relief as the Court deems just and proper.

DATED: April 15, 2008.

    Respectfully submitted,

    JOHN H. FINDLEY
    PAUL J. BEARD II
    DAMIEN M. SCHIFF


By _____
    DAMIEN M. SCHIFF

Attorneys for Plaintiff

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111  FAX (916) 419-7747

Complaint
- 14 -