RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

MEREDITH WEINBERG (VA Bar No. 47516)
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Tel:    (202) 514-2593
Fax:    (202) 514-8865
Email: meredith.weinberg@usdoj.gov
*Counsel for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARNUM TIMBER CO., a California limited partnership, | Civil Case No. CV 08-1988 |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and STEPHEN L. JOHNSON, in his official capacity as Administrator of the United States Environmental Protection Agency, | |
| Defendants. | DATE: August 14, 2008 |
| | TIME: 8:00 AM |
| | COURTROOM: 9, 19th Floor, SF |
| | JUDGE: Hon. William H. Alsup |

## NOTICE OF MOTION

Please take notice that on August 14, 2008 at 8:00 a.m. or as soon thereafter as counsel

can be heard, defendants United States Environmental Protection Agency and Stephen L.

Johnson ("Defendants") will move this Court, located in Courtroom 9, United States Court

House located at 450 Golden Gate Avenue, San Francisco, California, to dismiss Plaintiff

1  Barnum Timber Co.'s Complaint filed on or about April 15, 2008, against the Defendants.

2  **<u>RELIEF REQUESTED</u>**

3      The relief Defendants seek is dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ.

4  P. 12(b)(1).

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Clean Water Act Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   The TMDL Process: Impaired Water Lists and TMDL Development . . . . . . . . 2

    C.   TMDL Implementation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   Barnum's Claim Challenging EPA's Establishment of the 1998 TMDL for
        Sediment for Redwood Creek Is Barred by the Statute of Limitations . . . . . . . . 7

    B.   Barnum's Listing Claims Should Be Dismissed Because It Lacks
        Standing to Challenge EPA's Approval of the CWA Section 303(d) List . . . . . . 9

        1. Plaintiff Lacks Constitutional Standing to Challenge EPA's Approval
           of California's CWA Section 303(d) List . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           a.   EPA's approval of California's CWA Section 303(d) list does
               not injure Barnum in any concrete, imminent manner . . . . . . . . . . . . . . 10

           b.   Any alleged harm to Barnum would not be traceable to
               EPA's actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           c.   Any alleged harm to Barnum would not be redressable by an
               order against EPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   In Any Event, Barnum's Listing Claims Should Be Dismissed on
        Ripeness Grounds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1. Barnum Would Suffer No Harm From the Delayed Review of its
           Challenge to EPA's approval of the CWA Section 303(d) List . . . . . . . . . . 15

        2. Barnum's Claims Challenging EPA's Approval of the CWA Section
           303(d) List Are Not Fit For Judicial Review . . . . . . . . . . . . . . . . . . . . . 16

1

2 CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3  **CASES**

4  Abbott Labs. v. Gardner,

5   387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

6  Allen v. Wright,

7   468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8  American Canoe Ass'n v. EPA,

9    No, 98-1195-CV-W-SOW-ECF (W.D. Mo. Feb. 27, 2001) . . . . . . . . . . . . . . . . . . 17

10  Association of Am. Med. Colls. v. United States,

11   217 F.3d 770 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12  Block v. North Dakota,

13   461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14  Carson Harbor Vill., Ltd. v. City of Carson,

15   353 F.3d 824 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16  Community for Creative Non-Violence v. Pierce,

17   814 F.2d 663 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18  Dietary Supplemental Coal., Inc. v. Sullivan,

19   978 F.2d 560 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20  Dreier v. United States,

21   106 F.3d 844 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

22  Environmental Prot. Info. Ctr. v. Pacific Lumber Co.,

23   266 F. Supp. 2d 1101 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

24  Ernst & Young v. Depositors Econ. Prot. Corp.,

25   45 F.3d 530 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

26  Gros Ventre Tribe v. United States,

27   469 F.3d 801 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28

1  In re Hunter,
2   66 F.3d 1002 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3  Johnson v. Stuart,
4   702 F.2d 193 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5  Land v. Dollar,
6   300 U.S. 731 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
7  Louisiana Envtl. Action Network v. Browner,
8   87 F.3d 1379 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
9  Lujan v. Defenders of Wildlife,
10   504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 9, 10, 12, 14
11  Manufactured Home Comtys., Inc. v. City of San Jose,
12   420 F.3d 1022 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
13  Mayfield v. Dalton,
14   109 F.3d 1423 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
15  McNutt v.  Gen. Motors Acceptance Corp. of Ind.,
16   298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
17  Missouri Soybean Ass'n v. U.S. EPA,
18   289 F.3d 509 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
19  Mortensen v. First Fed. Sav. & Loan Ass'n,
20   549 F.2d 884 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
21  National Treasury Employees Union v. United States,
22   101 F.3d 1423 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
23  National Wildlife Fed'n v. Gorsuch,
24   693 F.2d 156 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
25  Natural Res. Def. Council v. United States,
26   915 F.2d 1314 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13
27  Nesovic v. United States,
28   71 F.3d 776 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ohio Forestry Ass'n, Inc. v. Sierra Club,
   523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pritikin v. Dep't of Energy,
   254 F.3d 791 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pronsolino v. Marcus,
   91 F. Supp. 2d 1337 (N.D. Cal. 2000), aff'd, 291 F.3d 1123 (9th Cir. 2002) . . . . . . . . . . . . 13

Pronsolino v. Nastri,
   291 F.3d 1123 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

San Diego County Gun Rights Comm. v. Reno,
   98 F.3d 1121 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Scott v. Pasadena Unified School Dist.,
   306 F.3d 646 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Spannaus v. Dep't of Justice,
   824 F.2d 52 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

St. Clair v. City of Chico,
   880 F.2d 199 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Steel Co. v. Citizens for a Better Env't,
   523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Stock West, Inc. v. Confederated Tribes of the Colville Reservation,
   873 F.2d 1221 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Texas v. United States,
   523 U.S. 296 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,
   594 F.2d 730 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. v. Lazarenko,
   476 F.3d 642 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

US West Commc'ns v. MFS Intelenet Inc.,
   193 F.3d 1112 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Dalm,
  494 U.S. 596 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

United States v. Mitchell,
  463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

United States v. Mottaz,
  476 U.S. 834 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

United Transp. Union v. I.C.C.,
  891 F.2d 908 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,
  454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 11

Warth v. Seldin,
  422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

White v. Lee,
  227 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Whitman v. Am. Trucking Ass'ns, Inc.,
  531 U.S. 457 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Whitmore v. Arkansas,
  495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Winter v. Cal. Med. Review, Inc.,
  900 F.2d 1322 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

**STATUTES**

Federal Tort Claims Act,
28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Clean Water Act,
33 U.S.C. §§ 1251-1387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
33 U.S.C. § 1251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
33 U.S.C. § 1311(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 2, 4
33 U.S.C. § 1311(b)(1)(A)-(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

1   33 U.S.C. § 1311(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2   33 U.S.C. § 1311(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3   33 U.S.C. § 1313(a)-(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4   33 U.S.C. § 1313(c)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5   33 U.S.C. § 1313(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

6   33 U.S.C. § 1313(d)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

7   33 U.S.C. § 1313(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

8   33 U.S.C. § 1342(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9   33 U.S.C. § 1342(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

10  33 U.S.C. § 1362(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

11  33 U.S.C. § 1362(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

12  **RULES**

13  Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 14, 18

14  **CODE OF FEDERAL REGULATIONS**

15  40 C.F.R. § 122.44(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16  40 C.F.R. § 122.44(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

17  40 C.F.R. § 122.44(d)(1)(vii)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18  40 C.F.R. § 130.2(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19  40 C.F.R. § 130.7(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

20  40 C.F.R. § 130.7(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21  40 C.F.R. § 130.7(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

22  40 C.F.R. § 130.7(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

23  40 C.F.R. § 130.7(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

24  40 C.F.R. pt. 131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The United States Environmental Protection Agency and Stephen L. Johnson (collectively, "Defendants" or "EPA") hereby submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss Plaintiff Barnum Timber Co.'s ("Plaintiff" or "Barnum") Complaint pursuant to Fed. R. Civ. P. 12(b)(1). To begin, the claims in Barnum's Complaint relating to the 1998 TMDL for sediment in Redwood Creek should be dismissed because they are time-barred. Moreover, the CWA Section 303(d) listing claims in all three counts of Barnum's Complaint, as well as any claims relating to a yet-to-be established temperature TMDL for Redwood Creek, should be dismissed because Barnum lacks standing to assert those claims and because they are not ripe for adjudication. In support of this motion, EPA relies upon the pleadings and the following memorandum, with the attached supporting declaration.

**STATUTORY BACKGROUND**

**A.    Clean Water Act Generally**

Congress enacted the Clean Water Act, 33 U.S.C. §§ 1251-1387 ("CWA"), "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To accomplish this goal, the CWA has employed two major strategies: (1) designation of ambient water quality standards; and (2) permitting regimes that set effluent limits governing individual discharges. Before 1972, federal water quality legislation relied primarily on the water quality standards approach, under which the states, subject to federal approval, set water quality standards for interstate waters. In 1972, however, Congress amended the predecessor of the CWA and introduced a different approach based on the concept of prohibiting specific discharges of pollution. Section 301(a) prohibits the discharge of any pollutant, except as allowed under other sections of the statute or pursuant to discharge permits. 33 U.S.C. § 1311(a). As part of the new CWA permit regime, Congress authorized EPA to establish technology-based effluent limitations that incorporate increasingly stringent levels of

1   pollution control technology over time. Id. § 1311(b)(1)(A)-(B), (2).

2       The 1972 amendments, however, also preserved an important role for water quality

3   standards. Subsections 303(a)-(c) direct the states, with federal approval and oversight, to adopt

4   and maintain water quality standards for waters of the United States. 33 U.S.C. § 1313(a)-(c).

5   States must designate the use or uses for which each water is to be protected (e.g., recreation or

6   propagation of fish), and determine the level of water quality necessary to support the designated

7   uses. See generally id. § 1313(c)(2)(A); 40 C.F.R. pt. 131 (2001). Discharges must comply not

8   only with the technology-based effluent limitations, but also with any more stringent effluent

9   limitations necessary to meet water quality standards. 33 U.S.C. § 1311(b)(1)(C).

10      Section 402 created the National Pollutant Discharge Elimination System ("NPDES")

11  permit program as the principal means for implementing both technology-based effluent

12  limitations and water quality standards. Id. §§ 1342(a)(1), 1311(b)(1)(C); 40 C.F.R. § 122.44(a),

13  (d)(1). An NPDES permit transforms those general provisions into specific limits applicable to

14  an individual discharger. A discharge of pollutants (other than dredged or fill material) from any

15  "point source" (i.e., "any discernible, confined and discrete conveyance ... from which pollutants

16  are or may be discharged," 33 U.S.C. § 1362(14)), into the waters of the United States is

17  prohibited unless that discharge complies with the discharge limits and other requirements of an

18  NPDES permit. Id. §§ 1311(a), 1362(12). EPA has authorized California to administer the

19  NPDES permit program in California. 33 U.S.C. § 1342(b).

20  **B.    The TMDL Process: Impaired Water Lists and TMDL Development**

21      The 1972 amendments also introduced requirements for identification of "water quality

22  limited segments" and development of "total maximum daily loads" ("TMDLs") as mechanisms

23  to aid in the achievement of state water quality standards. Pursuant to subsection 303(d)(1)(A),

24  each state is required to identify and prioritize those waters within its boundaries for which the

25  technology-based effluent limitations and other required controls are not stringent enough to

26  achieve the applicable water quality standards. 33 U.S.C. § 1313(d)(1)(A); 40 C.F.R.

27  § 130.7(b)(1). Each state periodically submits a list of such substandard waters to EPA (the

28

1  "CWA Section 303(d) List"). <u>Id.</u> To compile the CWA Section 303(d) List, each state must

2  collect and "evaluate all existing and readily available" water quality data and information. 40

3  C.F.R. § 130.7(b)(5). The state must prioritize this list, taking into account the severity of the

4  pollution and the uses identified for the waters, and identify the pollutants causing or expected to

5  cause violations of applicable water quality standards. 33 U.S.C. § 1313(d)(1)(A); 40 C.F.R.

6  § 130.7(b)(4).

7       After a state develops its CWA Section 303(d) List, the state must then submit it to EPA

8  for review and approval. 40 C.F.R. § 130.7(d)(1). Subsection 303(d)(2) established a deadline

9  for submission of the first CWA Section 303(d) Lists, but only requires states to submit revised

10  CWA Section 303(d) Lists "from time to time." 33 U.S.C. § 1313(d)(2). Under EPA regulations

11  promulgated in 1992, states must submit CWA Section 303(d) Lists every two years. <u>See</u> 40

12  C.F.R. § 130.7(d)(1). In its CWA Section 303(d) List, a state must include new waters if the data

13  and information support listing, but may also omit previously-listed waters if, for example, a re-

14  examination of the data or the evaluation of new data shows that the waters do not qualify for

15  inclusion on the CWA Section 303(d) List. Within thirty days of a state's submission, EPA must

16  approve or disapprove the state's CWA Section 303(d) List. If EPA disapproves the CWA

17  Section 303(d) List, it must identify the impaired waters that should be listed within thirty days

18  from the date of disapproval. 33 U.S.C. § 1313(d)(2).

19       Subsection 303(d)(1)(C) requires the state to establish a TMDL for each waterbody-

20  pollutant combination identified on the CWA Section 303(d) List. 33 U.S.C. § 1313(d)(1)(C);

21  40 C.F.R. § 130.7(c)(1). A TMDL sets the quantity of a pollutant that may be introduced into a

22  receiving water without exceeding applicable water quality standards, taking into account

23  seasonal variations and a margin of safety. 33 U.S.C. § 1313(d)(1)(C). EPA's implementing

24  regulations define a TMDL for a pollutant as the sum of the "wasteload allocations" assigned to

25  point sources, the "load allocations" allocated to nonpoint sources or "natural background," and a

26  margin of safety to account for any uncertainty about the relationship between pollutant loads and

27  water quality. 40 C.F.R. §§ 130.2(i), 130.7(c)(1).

28

<u>DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT</u>
3

1    As with the CWA Section 303(d) Lists, states must submit TMDLs to EPA for approval.

2    33 U.S.C. § 1313(d)(2).  When a state submits a TMDL for a water on its CWA Section 303(d)

3    List, EPA must approve or disapprove the TMDL within thirty days.  If EPA disapproves the

4    TMDL, it must issue its own TMDL for that water within thirty days.  Id.

5    **C.    TMDL Implementation**

6    TMDLs established under Section 303(d)(1) are not self-executing.  Pronsolino v. Nastri,

7    291 F.3d 1123, 1129 (9th Cir. 2002) ("TMDLs are primarily informational tools that allow the

8    states to proceed from the identification of waters requiring additional planning to the required

9    [implementation] plans.").  A TMDL identifies the maximum amount of a pollutant that can be

10    added to a water without exceeding water quality standards; it does not, by itself, prohibit any

11    conduct or require any actions.  Id. at 1128.  As described below, a state's regulatory program

12    may prohibit conduct or require new conduct based, in part, on a TMDL.

13    Limitations in loadings identified for point sources in a TMDL are implemented through

14    the NPDES permit system, described above.  The CWA prohibits discharges of pollutants from

15    point sources into waters of the United States absent compliance with discharge limits and other

16    requirements of an NPDES permit.  33 U.S.C. §§ 1311(a), 1362(12), (14).  EPA's permitting

17    regulations require permits for point sources to include effluent limitations that are consistent

18    with the assumptions and requirements of wasteload allocations established in TMDLs.  40

19    C.F.R. § 122.44(d)(1)(vii)(B).

20    Limitations in loadings identified for nonpoint sources (e.g., agricultural runoff), by

21    contrast, may only be enforced under state law.  See Natural Res. Def. Council v. United States,

22    915 F.2d 1314, 1316 (9th Cir. 1990) (noting that the CWA does not "directly prohibit[]" release

23    of pollutants from nonpoint sources); National Wildlife Fed'n v. Gorsuch, 693 F.2d 156, 176

24    (D.C. Cir. 1980) (recognizing that Congress made a clear distinction between point sources and

25    nonpoint sources, the former of which is the only one subject to direct federal regulation).  The

26    CWA provides no regulatory mechanism to control nonpoint source pollution, but instead uses

27    federal grants to encourage the states to accomplish such pollution reductions.  Natural Res. Def.

28

DEFENDANTS' NOTICE OF MOTION AND  MOTION TO DISMISS COMPLAINT
4

1  Council, 915 F.2d at 1318.

2  **FACTUAL BACKGROUND**

3  Plaintiff's Complaint in this suit is focused on Redwood Creek, located near Eureka,

4  California.  Redwood Creek was included on California's CWA Section 303(d) Lists in 1992 and

5  subsequent years.  On December 30, 1998, EPA established a TMDL for sediment for Redwood

6  Creek.  See TMDL for Sediment, Redwood Creek, California (Dec. 30, 1998), attached to

7  Weinberg Declaration as Exhibit A.[1]/  The sediment TMDL does not contain an implementation

8  plan.  Barnum contends that California's North Coast Regional Water Quality Control Board

9  ("RWQCB") has "drafted" an implementation plan for the Redwood Creek sediment TMDL.[2]/

10  Complaint at ¶ 36.

11  In 2006, California's State Water Resources Control Board submitted to EPA what it

12  referred to as its section 303(d) list, on which Redwood Creek appeared as impaired for both

13  temperature and sediment.[3]/  Complaint at ¶ 33.  On November 30, 2006, EPA partially approved

14

15

16  [1]/  EPA, rather than California, established the Redwood Creek TMDL for sediment
pursuant to a consent decree in which EPA committed to assuring that TMDLs would be
17  established for several Northern California waters, including Redwood Creek.  See Letter from
A. Strauss, EPA Region 9 Acting Water Division Director to J. Brecher, Esq. re: Pacific Coast
18  Fed'n of Fishermen's Ass'ns v. Marcus, U.S. District Court for the Northern District of
California, No. 95-4474 MHP (Jul. 30, 2006), attached to Weinberg Declaration as Exhibit B.
19

20  [2]/  EPA does not understand Barnum to be alleging that California has finalized or adopted a
sediment TMDL implementation plan for Redwood Creek, or that the sediment TMDL itself
21  includes such an implementation plan.  As discussed below, whether the state has actually
adopted an implementation plan for the Redwood Creek sediment TMDL is immaterial to a
22  determination of whether Barnum has standing to bring its listing claims, whether those claims
23  are ripe, or whether the statute of limitations on Barnum's claim regarding the 1998 sediment
TMDL has expired.
24

25  [3]/  Barnum acknowledges that Redwood Creek's impairment for sediment appears in the
section of California's submission entitled "Water Quality Limited Segments Being Addressed."
26  Complaint at ¶ 33.  While EPA does not believe that the "Water Quality Limited Segments Being
Addressed" section of California's submission is actually part of the CWA Section 303(d) List,
27  EPA will assume *arguendo* that it is, because the details regarding the various sections of
28  California's submission are not pertinent to the arguments in this motion.

1    the submission.[4/]   See Letter from A. Strauss, EPA Region 9 Water Division Director to T.

2    Howard, California State Water Resources Control Board Acting Executive Director (Nov. 30,

3    2006), attached to Weinberg Declaration as Exhibit C.

4        On or about April 15, 2008, Barnum filed suit under the Administrative Procedures Act

5    ("APA") to challenge EPA's approval of the CWA Section 303(d) List that California submitted

6    in 2006. Its Complaint contains three counts for which Barnum seeks both injunctive and

7    declaratory relief, alleging the following: 1) that EPA acted arbitrarily and capriciously by

8    improperly "retaining" Redwood Creek on the CWA Section 303(d) List as impaired because of

9    decreased fish populations, Complaint at ¶ 50; 2) that EPA acted arbitrarily and capriciously by

10   improperly "retaining" the Redwood Creek TMDL for sediment and also improperly "retaining"

11   Redwood Creek on the CWA 303(d) List as impaired for sediment, id. at ¶ 60; and 3) that EPA

12   acted arbitrarily and capriciously by improperly "retaining" Redwood Creek on the CWA Section

13   303(d) List as impaired for temperature and by taking any action consistent with the development

14   of a TMDL for temperature for Redwood Creek, id. at ¶ 70.

15        Barnum appears to assert that EPA should have disapproved California's Section CWA

16   303(d) List because, according to Barnum, Redwood Creek does not qualify for inclusion on the

17   CWA Section 303(d) List for either temperature or sediment.

18                                **STANDARD OF REVIEW**

19        A plaintiff has the burden of showing that the case is within the court's subject matter

20   jurisdiction. See In re Hunter, 66 F.3d 1002, 1005 (9th Cir. 1995). Plaintiff also has the burden

21   of pleading the requisite jurisdictional facts. Stock West, Inc. v. Confederated Tribes of the

22   Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). A plaintiff cannot prove jurisdiction

23   "by mere averment ... If [plaintiff's] allegations of jurisdictional facts are challenged by his

24

25   [4/]     Entirely unrelated to this case, on March 13, 2008, EPA reconsidered its approval

26   decision regarding the listing of three segments of Klamath River. In this reconsideration, EPA

27   identified microcystin toxins as an additional cause of impairment to one Klamath River segment
      for purposes of the 2006 CWA Section 303(d) List. This reconsideration, which is limited to

28   three specific segments of the Klamath River, does not affect the issues of concern in this case.

1  adversary in any appropriate manner, he must support them by competent proof." <u>McNutt v.</u>

2  <u>Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178, 189 (1936).

3      Issues of subject matter jurisdiction are properly decided under Fed. R. Civ. P. 12(b)(1).

4  <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000); <u>Association of Am. Med. Colls. v. United</u>

5  <u>States</u>, 217 F.3d 770, 778 (9th Cir. 2000).  Under a 12(b)(1) motion, "[n]o presumptive

6  truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will

7  not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

8  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."

9  <u>Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979) (quoting

10  <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)).  "[A] Rule

11  12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their

12  formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the

13  court."  <u>Dreier v. United States</u>, 106 F.3d 844, 847 (9th Cir. 1997) (quoting <u>St. Clair v. City of</u>

14  <u>Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989); <u>see also</u>, <u>Land v. Dollar</u>, 330 U.S. 731, 735 n. 4 (1947)

15  ("[W]hen a question of the District Court's juridiction is raised, either by a party or by the court

16  on its own motion, ... the court may inquire by affidavits or otherwise, into the facts as they

17  exist.").

18                              **ARGUMENT**

19  **A.    Barnum's Claim Challenging EPA's Establishment of the 1998 TMDL for Sediment**

20       **for Redwood Creek is Barred by the Statute of Limitations**

21      Barnum bases the second count of its Complaint on two premises:  1) that EPA's

22  approval of the CWA Section 303(d) List insofar as it included Redwood Creek as impaired for

23  sediment was arbitrary and capricious; and 2) that EPA's establishment of the TMDL for

24  sediment for Redwood Creek was arbitrary and capricious.  Complaint at ¶ 62.  However,

25  Barnum's claim regarding EPA's establishment of the sediment TMDL for Redwood Creek is

26  time-barred.

27      Waiver of the United States' sovereign immunity from a suit is a prerequisite to bringing

28

1    any claim against a federal agency: "It is axiomatic that the United States may not be sued

2    without its consent and that the existence of consent is a prerequisite for jurisdiction." United

3    States v. Mitchell, 463 U.S. 206, 212 (1983). The terms of such consent, including an applicable

4    statute of limitations, "define and circumscribe [the court's] jurisdiction." Nesovic v. United

5    States, 71 F.3d 776, 777 (9th Cir. 1995) (citing United States v. Dalm, 494 U.S. 596, 608

6    (1990)). Specifically, a statute of limitations "constitutes a condition on the waiver of sovereign

7    immunity." United States v. Mottaz, 476 U.S. 834, 841 (1986) (quoting Block v. North Dakota,

8    461 U.S. 273, 278 (1983)). Thus, if a claim is not filed against the United States within the

9    applicable time period, the claim "is barred, unless [the plaintiff] can find a recognized reason to

10   avoid this result." Nesovic, 71 F.3d at 778 (emphasis in original).

11         Section 706(2) of the APA constitutes a limited waiver of sovereign immunity but does

12   not contain a statute of limitations. Instead, the general six-year statute of limitations found in 28

13   U.S.C. § 2401(a) applies to claims brought pursuant to the APA. Gros Ventre Tribe v. United

14   States, 469 F.3d 801, 814 n.12 (9th Cir. 2006); Envtl. Prot. Info. Ctr. v. Pacific Lumber Co., 266

15   F. Supp. 2d 1101, 1121 (N.D. Cal. 2003). The statutory language is unequivocal: "[E]very civil

16   action commenced against the United States shall be barred unless the complaint is filed within

17   six years after the right of action first accrues." 28 U.S.C. § 2401(a). Because this statute of

18   limitations is a condition of the United States' waiver of sovereign immunity, it must be

19   construed narrowly and in favor of the sovereign. See e.g., Spannaus v. Dep't of Justice, 824

20   F.2d 52, 55 (D.C. Cir. 1987); id. at 60 ("Section 2401(a) is more than an ordinary statute of

21   limitations; it is a condition on the waiver of sovereign immunity, and we are obliged to construe

22   such waivers strictly.").

23         A right of action under the APA accrues from the date of final agency action. Envtl.

24   Prot. Info. Ctr., 266 F.Supp. 2d at 1121. EPA's establishment of the TMDL for sediment for

25   Redwood Creek was a final agency action, Complaint at ¶ 61, that occurred on December 30,

26   1998. See Weinberg Declaration, Exhibit A. Barnum frames this portion of its claim as a

27   challenge to EPA's "retaining" of the TMDL for sediment for Redwood Creek, Complaint at

28

---

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

1  ¶ 60, but EPA's 2006 approval of the CWA Section 303(d) List did not "retain" the TMDL. See

2  Weinberg Declaration, Exhibit C. Indeed, the only action EPA has ever taken vis-a-vis the

3  sediment TMDL for Redwood Creek was on December 30, 1998. The statute of limitations on a

4  challenge to that action thus expired six years later, on December 30, 2004. Accordingly,

5  Barnum's challenge to EPA's establishment (or "retention") of the TMDL for sediment for

6  Redwood Creek is time-barred and should be dismissed.[5]/

7  **B.    Barnum's Listing Claims Should Be Dismissed Because It Lacks Standing to**

8        **Challenge EPA's Approval of the CWA Section 303(d) List**

9        **1.    Plaintiff Lacks Constitutional Standing to Challenge EPA's Approval of**

10             **California's CWA Section 303(d) List**

11       "Article III of the Constitution confines the federal courts to adjudicating actual 'cases'

12  and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). The standing doctrine serves to

13  delineate those cases appropriate for resolution in federal courts and ensures that the litigants

14  before the court have a sufficiently personal stake in the outcome of the litigation. See Lujan v.

15  Defenders of Wildlife, 504 U.S. 555, 560 (1992). It also "tends to assure that the legal questions

16  presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in

17  a concrete factual context conducive to a realistic appreciation of the consequences of judicial

18  action." Valley Forge Christian Coll. v. Americans United for Separation of Church and State,

19  Inc., 454 U.S. 464, 472 (1982).

20       To meet the "irreducible constitutional minimum" of standing, a plaintiff must show:

21

22  [5]/    Although the assertions in Barnum's Complaint are somewhat convoluted, it appears that

23  Barnum may also be asserting a claim challenging EPA's actions vis-a-vis the development of a

    temperature TMDL for Redwood Creek. Complaint at ¶ 70. Yet Barnum acknowledges that,

24  unlike the sediment TMDL, no temperature TMDL for Redwood Creek has been established. Id.

25  at ¶ 37. Because no EPA "action" has occurred, Barnum cannot show that it has suffered harm

    from such "action"; therefore, Barnum does not have constitutional standing to bring a claim

26  challenging EPA's "action" with respect to the temperature TMDL. See infra pp. 10-15

    (discussion of constitutional standing). Likewise, in the absence of EPA "action" and lack of

27  resulting harm from such "action," any claim challenging EPA's "action" with respect to the

28  temperature TMDL is not ripe. See infra pp. 15-19 (discussion of ripeness doctrine).

1  (1) that it has suffered an "injury in fact" that is "concrete and particularized...and actual or

2  imminent, not conjectural or hypothetical"; (2) that the conduct complained of caused the alleged

3  injury; and (3) that the injury is "likely" redressable by an order in favor of the plaintiff. Lujan,

4  504 U.S. at 560-61 (citations and internal quotations omitted). The burden for establishing all

5  three of these elements falls squarely on the plaintiff. Lujan, 504 U.S. at 561. Here, Barnum has

6  established none of these three elements with respect to its listing claims.

7          a.    **EPA's approval of California's CWA Section 303(d) list does not injure**

8                **Barnum in any concrete, imminent manner**

9          An injury-in-fact is the "invasion of a legally protected interest which is (a) concrete and

10  particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at

11  560 (citations and internal quotations omitted). Barnum appears to describe two basic "injuries"

12  in its Complaint, yet neither is concrete or imminent. First, Barnum asserts that EPA's approval

13  of the CWA Section 303(d) List has caused it to "incur[ ] substantial extra costs in managing its

14  lands," and that the available uses of its land have been "severely restrict[ed]" and

15  "diminish[ed]."[6]/ Barnum Complaint, ¶¶ 39 and 45. Second, it asserts that its property has been

16  devalued. Id. But because there are no facts in Barnum's Complaint that substantiate these

17  speculative allegations, Barnum cannot meet the injury-in-fact prong of the standing inquiry.

18          As a threshold matter, the Complaint does not allege the existence of even one particular

19  land management restriction that was imposed on Barnum after EPA approved the CWA Section

20  303(d) List. Moreover, Barnum does not allege that it incurred any particular costs after EPA

21  approved of the CWA Section 303(d) List. Nor does the Complaint allege any facts regarding

22  Barnum's assertion that its property value has been diminished. For example, Barnum has not

23  alleged that after EPA approved the CWA Section 303(d) List, Barnum tried to sell its land and

24  could not do so, or that it could only sell its land for a reduced price.

25  _____

26  [6]/    As discussed above, to the extent Barnum is alleging that EPA's establishment of the
    sediment TMDL for Redwood Creek caused its injuries, that claim is time-barred. EPA is not
27  asserting that Barnum lacks standing to bring claims challenging EPA's 1998 establishment of
28  the sediment TMDL for Redwood Creek.

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

1    Moreover, any injury Barnum might suffer would be highly speculative, as it would

2    depend in all likelihood on the occurrence of a complex sequence of contingent events, such as:

3    (1) Redwood Creek remains on California's CWA Section 303(d) List as impaired for sediment

4    and/or temperature; (2) California develops a Redwood Creek temperature TMDL[2]/; (3)

5    California adopts TMDL implementation plans for Redwood Creek for sediment and/or

6    temperature that regulated timber sources via land management practices instead of focusing on

7    other sources; (4) California carries out the implementation plans and applies the land

8    management practices to Barnum; and (5) these land management practices impose costs on

9    Barnum or deter prospective purchasers, thereby injuring Barnum.  This chain of events

10   connecting EPA's approval of the CWA Section 303(d) List with harm to Barnum could be

11   broken at any link along the way.  For instance, Redwood Creek might be removed from

12   California's CWA Section 303(d) List before any TMDL is established for temperature, or

13   California could implement the temperature and sediment TMDLs by regulating other sources

14   besides timber or by proposing land management practices that do not harm Barnum.  Barnum's

15   alleged injury is, at bottom, conjectural and hypothetical.  See Whitmore v. Arkansas, 495 U.S.

16   149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Article

17   III."); see also Johnson v. Stuart, 702 F.2d 193, 194-95 (9th Cir. 1983) (when challenged action

18   has no impact on plaintiffs, plaintiffs lack standing).

19   In sum, Barnum's injury is contingent and uncertain, and any resolution of its claims lacks

20   the "concrete factual context conducive to a realistic appreciation of the consequences of judicial

21   action."  Valley Forge Christian Coll., 454 U.S. at 472; see also Louisiana Envt'l Action Network

22   v. Browner, 87 F.3d 1379, 1382-84 (D.C. Cir. 1996) (holding that plaintiffs' challenges were too

23   remote to establish an imminent and concrete injury because plaintiffs could not be injured

24

25   [2]/    The CWA gives states the primary responsibility to establish TMDLs. 33 U.S.C. §
1313(d)(1)(C). Even though EPA establishes TMDLs in certain circumstances, such as when

26   EPA disapproves a state's TMDL, or pursuant to a consent decree (as was done for the Redwood

27   Creek sediment TMDL), the consent decree under which EPA established the sediment TMDL
for Redwood Creek does not require establishment of a temperature TMDL for Redwood Creek.

28   See Weinberg Declaration, Exhibit B.

1    without the occurrence of a subsequent chain of events).  Because Barnum fails to make the

2    required showing of concrete injury, it has no standing to bring the listing claims in this suit.

3           **b.      Any alleged harm to Barnum would not be traceable to EPA's actions**

4           In order to establish the second element of standing, Barnum must demonstrate that EPA's

5    CWA Section 303(d) List approval caused its alleged injury.  Lujan, 504 U.S. at 560.  However,

6    because its alleged injuries could only occur as the result of an independent third party's actions,

7    Barnum fails to make the required demonstration that its alleged injuries are "fairly traceable" to

8    EPA.  See Pritikin v. Dep't of Energy, 254 F.3d 791, 797 (9th Cir. 2001) (finding no causation

9    where plaintiff could not show that agency's lack of funding caused her injury, because a "third

10   party not before the court" made the independent decision causing plaintiff's injury); see also

11   Lujan, 504 U.S. at 560.

12          Barnum's Complaint does not contain any facts showing that its alleged injuries are

13   traceable to any EPA action.  As discussed above, Barnum's alleged injuries would occur only

14   after California either: (1) establishes a temperature TMDL for Redwood Creek and adopts an

15   implementation plan for that temperature TMDL; or (2) adopts a TMDL implementation plan for

16   sediment for Redwood Creek.  Accordingly, the independent actions of a third party would have

17   caused Barnum's injury.

18          Any injury to Barnum would be traceable to California, rather than to EPA, because

19   California's potential adoption of TMDL implementation plans in the future is a state action over

20   which EPA has no control.  See Lujan, 504 U.S. at 560 (stating that the injury "has to be fairly ...

21   traceable to the challenged action of the defendant, and not ... the result of the independent action

22   of some third party not before the court.") (citations and internal quotations omitted); Cmty. for

23   Creative Non-Violence v. Pierce, 814 F.2d 663, 669 (D.C. Cir. 1987) ("The line of causation that

24   we are expected to follow is far too attenuated to sustain appellant's standing.").  EPA regulations

25   do not require California to develop TMDL implementation plans, and EPA is neither required to

26   nor does it approve TMDL implementation plans.  See Pronsolino v. Nastri, 291 F.3d 1123,1140

27   (9th Cir. 2002) ("California chose both if and how it would implement the [ ] TMDL.  States must

28

1   implement TMDLs only to the extent that they seek to avoid losing federal grant money; there is

2   no pertinent statutory provision otherwise requiring implementation of § 303 plans or providing

3   for their enforcement.") (emphasis in original).  Under the CWA, California must decide how, if

4   at all, to implement TMDLs.  See Natural Res. Def. Council, 915 F.2d at 1316, 1318.

5         Indeed, in exercising its authority, California could make numerous decisions that would

6   completely eliminate any harm to Barnum.  As this Court has stated regarding another TMDL

7   established by EPA in California:

8         California is free to select whatever, if any, land-management practices it feels
          will achieve the load reductions called for by the TMDL.  California is also free
9         to moderate or to modify the TMDL reductions, or even refuse to implement
          them, in light of countervailing state interests.  Although such steps might
10        provoke EPA to withhold federal grant money, California is free to run the risk.

11  Pronsolino v. Marcus, 91 F. Supp. 2d 1337, 1355 (N.D. Cal. 2000), aff'd, 291 F.3d 1123 (9th Cir.

12  2002).  For example, California could decide to refrain from implementing certain TMDLs, to

13  regulate only other sources, or to adopt land management practices that do not harm Barnum.

14        At bottom, EPA's mere approval of the CWA Section 303(d) List does not determine the

15  course of action California will take in the future vis-a-vis establishing a temperature TMDL for

16  Redwood Creek or implementing Redwood Creek temperature and sediment TMDLs in a manner

17  that might cause Barnum harm.  Because Barnum cannot show that EPA will be the cause of its

18  alleged future injury, it fails to meet the second prong of the standing inquiry.  San Diego County

19  Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996) (affirming district court's finding

20  of no causation where plaintiff's injury was not traceable to the statute which plaintiff claimed

21  was unconstitutional); United Transp. Union v. I.C.C., 891 F.2d 908, 912 (D.C. Cir. 1989)

22  ("[w]hen considering any chain of allegations for standing purposes, we may reject as overly

23  speculative those links which are predictions of future events (especially future actions to be taken

24  by third parties).").

25         c.     Any alleged harm to Barnum would not be redressable by an order against

26                EPA

27        To complete the standing analysis, a plaintiff must also show that its injury is likely to be

28

1  redressed by an order in its favor. <u>Lujan</u>, 504 U.S. at 560.  Barnum cannot do so.

2      Because California controls the implementation of land management practices in the state,

3  an order against EPA would not redress any alleged injury to Barnum.  For example, if California

4  adopts TMDL implementation plans that harm Barnum by requiring it to change its land

5  management practices, an order against EPA would have no effect on those implementation plans

6  or their contents.  Moreover, if California adopts changes in land management practices for

7  reasons other than TMDL implementation, an order against EPA would not prevent any injury to

8  Barnum resulting from such changes.  See <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83,

9  105-10 (1998) (holding that injury is not redressable because any relief sought would not remedy

10  the injury).  Accordingly, Barnum cannot satisfy the redressability element that is required to

11  demonstrate standing.

12      In sum, because Barnum cannot show any of the three elements required for standing, its

13  listing claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

14  **C.    <u>In Any Event, Barnum's Listing Claims Should Be Dismissed on Ripeness Grounds</u>**

15      Like the standing doctrine, the ripeness doctrine prevents federal courts from deciding

16  abstract disagreements.  <u>See Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148 (1967).  <u>See also</u> <u>Warth</u>

17  <u>v. Seldin</u>, 422 U.S. 490, 499 n.10 (1975) ("The standing question thus bears close affinity to

18  questions of ripeness – whether the harm asserted has matured sufficiently to warrant judicial

19  intervention ....").  Ripeness is primarily a question of the timing of judicial review, and seeks to

20  avoid "premature adjudication" of disputes.  <u>Scott v. Pasadena Unified School Dist.</u>, 306 F.3d

21  646, 662 (9th Cir. 2002) (citing <u>Abbott</u>).  As the Supreme Court has stated, the doctrine is

22  designed:

23          to prevent the courts, through avoidance of premature adjudication, from
           entangling themselves in abstract disagreements over administrative policies, and
24          also to protect the agencies from judicial interference until an administrative
           decision has been formalized and its effects felt in a concrete way by the
25          challenging parties.

26  <u>Abbott Labs.</u>, 387 U.S. at 148-49.

27      The Supreme Court has established a two-part test to determine whether a claim is ripe for

28

---

**DEFENDANTS' NOTICE OF MOTION AND  MOTION TO DISMISS COMPLAINT**
14

1   review.  Under this test, a court must consider:  (1) whether the parties will suffer hardship if

2   review is delayed; and (2) whether the issue is fit for judicial review.  Whitman v. American

3   Trucking Ass'ns, Inc., 531 U.S. 457, 479 (2001); Ohio Forestry Ass'n, Inc. v. Sierra Club, 523

4   U.S. 726, 732-33 (1998).  Barnum fails both prongs of this test.[8]/

5          **1.    Barnum Would Suffer No Harm From the Delayed Review of its Challenge to**

6                **EPA's approval of the CWA Section 303(d) List**

7          The first part of the Supreme Court's ripeness test requires a court to consider whether

8   withholding review will cause significant harm to the plaintiff.  Ohio Forestry, 523 U.S. at 733-

9   34.  A plaintiff suffers significant harm, for example, if the delay in review forces the plaintiff to

10  modify its behavior to avoid future consequences.  Id.; Manufactured Home Comtys., Inc. v. City

11  of San Jose, 420 F.3d 1022, 1033 (9th Cir. 2005) ("Nothing in the record suggests that delaying

12  resolution of this legal issue will significantly harm either party.").  Further, any harm from the

13  delayed review cannot be "speculative."  Carson Harbor Vill., Ltd. v. City of Carson, 353 F.3d

14  824, 830 n.5 (9th Cir. 2004).  Applying these standards, Barnum cannot show that delayed review

15  of EPA's approval of California's CWA Section 303(d) List will significantly harm it, or that

16  "withholding review would result in 'direct and immediate' hardship and would entail more than

17  possible financial loss."  Winter v. Cal. Med. Review, Inc., 900 F.2d 1322, 1325 (9th Cir. 1990)

18  (internal citations omitted); see also US West Commc'ns v. MFS Intelenet Inc., 193 F.3d 1112,

19  1118 (9th Cir. 1999).

20         As discussed above, Barnum's conclusory allegations of adverse effects it has suffered due

21  to EPA's decision to approve the CWA Section 303(d) List do not rise to the level necessary to

22  show injury-in-fact for standing purposes.  Likewise, Barnum's inability to prove its injury for

23  standing purposes applies to the ripeness inquiry.  See Ohio Forestry Ass'n, 523 U.S. at 733-34

24  (holding challenge to provisions of Forest Service's land management plan was not ripe because

25  _____

26  [8]/    As discussed above, to the extent Barnum is alleging that EPA's establishment of the
        sediment TMDL for Redwood Creek caused its injuries, that claim is time-barred.  EPA is not
27      asserting that Barnum's claims challenging EPA's 1998 establishment of the sediment TMDL
        should be dismissed on ripeness grounds.
28

1    those provisions did not cause plaintiff to suffer adverse effects).  As discussed above, any alleged

2    injury flowing from EPA's CWA Section 303(d) List approval is purely speculative, because a

3    Redwood Creek temperature TMDL has yet to be established, and California has yet to adopt

4    implementation plans for either of the Redwood Creek TMDLs.  See Missouri Soybean Ass'n v.

5    U.S. EPA, 289 F.3d 509, 512 (8th Cir. 2002) (holding plaintiff's challenge to EPA's approval of

6    Missouri's CWA Section 303(d) List not ripe because the only harm plaintiff alleged was a harm

7    that might occur sometime in the future).  Delay in review of an action that Barnum cannot show

8    causes it actual injury cannot cause a "direct and immediate" hardship; and thus, Barnum cannot

9    satisfy the hardship prong of the ripeness inquiry.  See U.S. v. Lazarenko, 476 F.3d 642, 652 (9th

10   Cir. 2007); see also, Mayfield v. Dalton, 109 F.3d 1423, 1425 (9th Cir. 1997) (holding claim was

11   not ripe because threat of harm was not "sufficiently imminent").

12       **2.    Barnum's Claims Challenging EPA's Approval of the CWA Section 303(d)**

13             **List Are Not Fit For Judicial Review**

14       The "fitness" prong of a ripeness inquiry addresses a court's ability to resolve the issue

15   presented. National Treasury Employees Union v. United States, 101 F.3d 1423, 1431 (D.C. Cir.

16   1996) ("Article III courts should not make decisions unless they have to.").  To conduct this

17   inquiry, a court considers factors such as whether an agency action is final and whether resolution

18   of the question presented turns on facts that are sufficiently developed. Dietary Supplemental

19   Coal., Inc., 978 F.2d 560, 562 (9th Cir. 1992).  Importantly, "[a] claim is not ripe for adjudication

20   if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur

21   at all." Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotations omitted).  If the

22   claimed injury is too remote or speculative, the question is not fit for judicial review. Id.; Winter,

23   900 F.2d at 1325 ("where a series of contingent events must occur to produce an injury, a court

24   may find the case inappropriate for judicial resolution.").  By focusing a court's attention on

25   whether the injury turns on contingent or undeveloped facts, the fitness inquiry prevents the court

26   from embroiling itself in abstract disagreements, and ensures that it is presented with concrete

27   controversies. Abbott Labs., 387 U.S. at 148.

28

1        At this juncture, Barnum's challenge to EPA's approval of the CWA Section 303(d) List

2  depends on a highly contingent sequence of events (including actions to be taken by a third party

3  not involved in this suit), that may, in fact, never come to pass.  When a plaintiff's claim "depends

4  upon future events that may never come to pass, or that may not occur in the form forecasted, then

5  the claim is unripe."  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 537 (1st Cir.

6  1995); see also National Treasury Employees, 101 F.3d at 1431 (finding plaintiff's claims unripe

7  because the facts upon which the claims depended were not fully developed, and concluding that

8  "[i]f we do not decide [the issue] now, we may never need to.").

9        The Eighth Circuit's decision in Missouri Soybean is directly on point concerning this

10  prong of the ripeness inquiry.  Similar to Barnum's allegations here, the Missouri Soybean

11  plaintiff alleged that:

12        the premature listing of the challenged waters injures its members through potential
changes in land management practices, limitations on crop growth and rotation,

13        limitations on sale and use of fertilizers, pesticides and herbicides, decreases in
property values, increases in farming costs, and the inability to plan for and rely on

14        the use of certain waters and land caused by Clean Water Act requirements.

15  289 F.3d at 511.  The Eighth Circuit upheld the district court's dismissal of these claims on

16  ripeness grounds, finding that the alleged injury due to "[m]ore stringent controls on water use ...

17  will not occur until after TMDLs are developed and implemented.  Even then, it remains uncertain

18  whether TMDL development or regulatory implementation will adversely impact [plaintiff]'s

19  members."  Id. at 512.  Thus, the Court concluded that plaintiff's claims were not fit for judicial

20  review, because "until objectionable TMDLs are developed and implemented, '[plaintiff]'s claims

21  of harm are too remote to be anything other than speculative.'"  Id. at 513 (quoting American

22  Canoe Ass'n v. EPA, No, 98-1195-CV-W-SOW-ECF, slip op. at 5 (W.D. Mo. Feb. 27, 2001)).

23        Here, Barnum's alleged injuries of land management restrictions and property diminution

24  due to EPA's approval of California's CWA Section 303(d) List are similarly remote and

25  speculative, and are thus not fit for judicial review until they are more concrete.[9]/

26

27  [9]/    Barnum's conclusory allegation that the value of its property has been diminished due to

28  EPA's listing decision is not supported by any facts alleged in the Complaint.  See supra pp. 11-

1    In sum, Barnum's failure to meet both the hardship and fitness elements of the ripeness

2    inquiry means that its listing claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

3                                    **CONCLUSION**

4    For the reasons stated in this memorandum, Defendants request that this Court grant

'5    Defendants' motion to dismiss all of Plaintiffs' claims based on Fed. R. Civ. P. 12(b)(1), and

6    enter final judgment in favor of Defendants.

7

8                                    Respectfully submitted,

9    Dated:    June 30, 2008

10                                   RONALD J. TENPAS

11                                   Assistant Attorney General

12                                   Environment & Natural Resources Division

13

14                                   MEREDITH WEINBERG

15                                   Trial Attorney

16                                   U.S. Department of Justice

17                                   Environment & Natural Resources Division
                                     Environmental Defense Section

18                                   P.O. Box 23986
                                     Washington, D.C. 20026-3986

19

20                                   Counsel for Defendants EPA and Johnson

21

22

23

24

25

26

27    _____

28    13 (discussion of injury-in-fact).

1

## <u>CERTIFICATE OF SERVICE</u>

2

3    I certify that on June 30, 2008, a true and correct copy of the foregoing DEFENDANTS'

4    NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF

5    POINTS AND AUTHORITIES IN SUPPORT THEREOF was served electronically via the

6    Court's e-filing system to Counsel of Record.

7

8    _____
     MEREDITH WEINBERG

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28