JOHN H. FINDLEY, No. 50495
E-mail:  jhf@pacificlegal.org
PAUL J. BEARD II, No. 210563
E-mail:  pjb@pacificlegal.org
DAMIEN M. SCHIFF, No. 235101
E-mail:  dms@pacificlegal.org
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, California 95834
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARNUM TIMBER CO., | No. 3:08-cv-01988-WHA |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and STEPHEN L. JOHNSON, in his official capacity as Administrator, | Date:  September 25, 2008<br>Time:  8:00 a.m.<br>Courtroom 9, 19th Floor<br>Judge Hon. William H. Alsup |
| Defendants. | |

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

# TABLE OF CONTENTS

                                                                                      **Page**

TABLE OF AUTHORITIES ................................................... ii

STATEMENT OF ISSUES ................................................... 1

STATEMENT OF THE CASE ................................................ 1

   A.  Legal and Factual Background ...................................... 1

   B.  Procedural History ............................................... 5

STANDARD OF REVIEW ................................................... 6

SUMMARY OF ARGUMENT ................................................ 6

ARGUMENT .............................................................. 7

I.   BARNUM'S CAUSE OF ACTION FALLS WITHIN THIS COURT'S
    JURISDICTION, AND IS RIPE FOR ADJUDICATION ...................... 7

   A.  Barnum's Claims Are Timely ....................................... 7

      1.  The Final Agency Action Challenged in Barnum's
         Complaint Is EPA's Decision To Retain Redwood
         Creek on the 2006 List of Impaired Waters ...................... 7

      2.  The Doctrine of Equitable Tolling Applies to Barnum's Claim ............ 9

   B.  Barnum Has Standing To Challenge EPA's Approval
      of Redwood Creek as an Impaired Waterbody ......................... 11

      1.  Barnum Has Suffered Concrete Injuries as a Direct Result of the
         Challenged Agency Action That Can Be Redressed by This Court ........ 11

         a.  EPA's Listing of Redwood Creek Has Caused
            Barnum To Suffer Real and Concrete Injuries ..................... 11

         b.  EPA's Listing of Redwood Creek as an Impaired
            Water Body Has Directly Caused Barnum's Harm ................. 15

         c.  This Court Could Redress Barnum's Injury by
            Ordering EPA To Delist Redwood Creek from
            the CWA Section 303(d) List of Impaired Waters .................. 15

   C.  Barnum's Claim Is Ripe for Adjudication and Immediate Resolution .......... 16

      1.  Barnum's Claim Is Fit for Judicial Review ....................... 17

      2.  Barnum Would Suffer Continuing Injury
         If Its Claim Were Not Heard Now ............................. 17

CONCLUSION ............................................................. 18

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4  *18 Unnamed "John Smith" Prisoners v. Meese*, 871 F.2d 881 (9th Cir. 1989) . . . . . . . . . . 16

5  *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16-17

6  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7  *Barlow v. Collins*, 397 U.S. 159 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8  *Bennett v. Spear*, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8, 11, 14-15

9  *Buckley v. Gallo Sales Co.*, 949 F. Supp. 737 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . 6

10  *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11  *Cal. Dep't of Educ. v. Bennett*, 833 F.2d 827 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 9

12  *Clymore v. United States*, 217 F.3d 370 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13  *Coho Salmon v. Pacific Lumber Co.*, 61 F. Supp. 2d 1001 (N.D. Cal. 1999) . . . . . . . . . . . 11

14  *Envtl. Prot. Info. Ctr. v. Pacific Lumber Co.*, 266 F. Supp. 2d 1101 (N.D. Cal. 2003) . . . . . . 7

15  *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

16  *Harris v. Carter*, 515 F.3d 1051 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

17  *Herb v. Pitcairn*, 325 U.S. 77 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 16

19  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 10

20  *INS v. St. Cyr*, 533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

21  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22  *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 6

24  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

25  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

26  *Massachusetts v. EPA*, 127 S. Ct. 1438 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

27  *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 15

28  *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803 (2003) . . . . . . . . . . . . . 17

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

**Page**

*Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136 (9th Cir. 2007) . . . . . . 8

*Nw. Envtl. Advocates v. EPA*, Nos. 03-74795, 06-17187, 06-17188,
2008 WL 2813103 (9th Cir. July 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Okinawa Dugong v. Gates*, 543 F. Supp. 2d 1082 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . 16

*Or. Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977 (9th Cir. 2006) . . . . . . . . . . . 9

*Or. Natural Res. Council v. Harrell*, 52 F.3d 1499 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 9

*O'Donnell v. Vencor, Inc.*, 465 F.3d 1063 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Raines v. Byrd*, 521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) . . . . . . . . . 12, 14

*Santa Maria v. Pac. Bell*, 202 F.3d 1170 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
873 F.2d 1221 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Toilet Goods Ass'n v. Gardner*, 387 U.S. 158 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Warth v. Seldin*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Young v. United States*, 535 U.S. 43 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes**

5 U.S.C. § 551, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

§ 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

33 U.S.C. § 1251, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

§ 1313(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

§ 1313(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Pub. Res. Code § 4511, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 4551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

|  |  | Page |
|---|---|---|
|  | **Regulations** |  |
| 40 C.F.R. § 130.7(a) | ................................................. | 2 |
| § 130.7(b)(1) | ................................................. | 2 |
| § 130.7(c) | ................................................. | 2 |
| § 130.7(d)(1) | ................................................. | 1 |
| § 130.7(d)(2) | ................................................. | 1 |
| Cal. Code Regs. tit. 14, § 895, *et seq.* | ................................................. | 2 |
| § 916.9 | ................................................. | 12 |
| § 916.9(a) | ................................................. | 4 |
| § 916.9(c) | ................................................. | 4, 13 |
| § 916.9(f) | ................................................. | 4, 8, 12 |
| § 916.9(g) | ................................................. | 4, 8, 12 |
| § 916.9(h)(1) | ................................................. | 13 |
| § 916.9(h)(2) | ................................................. | 13 |
| § 916.9(h)(3) | ................................................. | 13 |
| § 916.9(i) | ................................................. | 4, 12 |
| § 916.9(j) | ................................................. | 4 |
| § 916.9(k) | ................................................. | 13-14 |
| § 916.9(k)(1) | ................................................. | 4, 14 |
| § 916.9(*l*) | ................................................. | 4 |
| § 916.9(n) | ................................................. | 4, 13 |
| § 916.9(n)(2) | ................................................. | 13 |
| § 916.9(t) | ................................................. | 8 |
|  | **Rule** |  |
| Fed. R. Civ. P. 12(b)(1) | ................................................. | 6 |

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA  95834
(916) 419-7111  FAX (916) 419-7747

**Page**

**Miscellaneous**

4 Davis, K., *Administrative Law Treatise* (2d ed. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

California Department of Forestry and Fire Protection, Draft *Process for Threaten
or Impaired Watershed Regulations Review* (Mar. 24, 2008), *available at*
http://www.fire.ca.gov/cdfbofdb/pdfs/TI_ReviewProcess_032408.pdf
(last visited Aug. 6, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 18

Galloway, Jr., Russell W., *Basic Justiciability Analysis*,
30 Santa Clara L. Rev. 911 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

May, James R., *The Aftermath of TMDL Litigation:  Consent
Decrees and Settlement Agreements*, SL036 ALI-ABA 157 (2006) . . . . . . . . . . . .  3, 14, 16

Taft, William H., *The Right of Private Property*, 3 Mich. L.J. 215 (1894) . . . . . . . . . . . . . .   12

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

**STATEMENT OF ISSUES**

By its motion to dismiss, Defendants United States Environmental Protection Agency and Stephen L. Johnson (collectively EPA) attack the justiciability of Barnum Timber Company's (Barnum) challenge to EPA's 2006 decision to retain Redwood Creek as an impaired waterbody under Section 303(d), 33 U.S.C. § 1313(d), of the Clean Water Act (CWA), *id.* § 1251, *et seq.* The resolution of EPA's motion hinges upon three legal issues: (1) whether Barnum filed its action in a timely manner; (2) whether Barnum has standing to litigate the action; and (3) whether Barnum's action is ripe.

(1) The first issue requires this Court to determine whether Barnum's cause of action accrued in 2006 when EPA acted to retain Redwood Creek on the Section 303(d) list. If this Court concludes that the 2006 listing of Redwood Creek is not a final agency action, then it must be determined whether the statute of limitations should be equitably tolled for the five-year period in which Barnum pursued its claims in the California Superior Court. (2) The second issue requires this Court to determine whether Barnum has suffered a concrete injury, which can be fairly traced to EPA's actions and is redressable by a favorable decision of this Court. (3) Finally, the third issue requires this Court to consider the action's fitness for judicial review and the harm that Barnum would suffer if review were withheld.

**STATEMENT OF THE CASE**

Barnum has suffered concrete injury as a result of EPA's decision to retain Redwood Creek as an impaired waterbody. Faced with current and ongoing hardships resulting from that decision, Barnum challenges EPA's 2006 Section 303(d) listing decision.

**A.  Legal and Factual Background**

Section 303(d) of the CWA requires all states to identify waterbodies that have not met state-established and federally approved water-quality standards. Each waterbody segment that fails to meet these requirements is referred to as impaired by a particular pollutant. Once a state's proposed list is completed, the state must submit the proposal to EPA, which may either approve or disapprove of it, in whole or in part. *See* 40 C.F.R. § 130.7(d)(1). EPA has 30 days to complete its review. *See id.* § 130.7(d)(2).

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

Listing a waterbody as impaired under Section 303(d) requires the state (or the EPA) to develop total maximum daily loads (TMDLs) for each pollutant by which the waterbody is impaired. *See* 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(b)(1) & (c) (2007). These TMDL limits are set in accordance with the impairment determinations made during the Section 303(d) process and, consequently, the TMDL listings are based on the 303(d) listing determinations. *See* 40 C.F.R. § 130.7(a) (2007).

In addition to triggering CWA requirements to promulgate TMDLs, a Section 303(d) impairment designation also carries legal consequences that immediately and directly affect property owners in California. For timber harvesting in California, the primary governing state statute is the Z'Berg-Nejedly Forest Practice Act (FPA) of 1973, Cal. Pub. Res. Code § 4511, *et seq*. The FPA authorizes the State Board of Forestry to issue Forest Practice Rules governing how and under what conditions timber may be harvested in the state. *See id*. § 4551. *See generally* Cal. Code Regs. tit. 14, § 895, *et seq*. In 2000, the Forest Practice Rules were amended in order to protect watersheds with anadromous salmonid species; the amendments created especially stringent land use restrictions for properties in watersheds containing waterbodies on the Section 303(d) list of impaired waters. *See* California Department of Forestry and Fire Protection, Draft *Process for Threaten or Impaired Watershed Regulations Review* 2 (Mar. 24, 2008), *available at* http://www.fire.ca.gov/cdfbofdb/pdfs/TI_ReviewProcess_032408.pdf (last visited Aug. 6, 2008) (hereinafter CDF). These rules "were termed the 'Threatened or Impaired Watershed' rules (T/I rules) and included rules for projects in watersheds listed as impaired under the 303(d) listing process." *Id*. As a result of EPA's 2006 decision to retain Redwood Creek on the 303(d) list of impaired waters, the T/I rules apply stringent land use restrictions on all properties in the watershed. *See* Declaration of James L. Able in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss (Able Decl.) ¶ 5.

EPA first listed Redwood Creek as impaired in 1993. Because the CWA requires EPA occasionally to consider whether the 303(d) listing is still warranted, EPA determined, in 2006, that the Redwood Creek remains an impaired waterbody. *See* 33 U.S.C. § 1313(d)(2). At that time, EPA analyzed whether Redwood Creek met applicable water quality standards; because the

1   quality of Redwood Creek's waters could have changed from the past, this analysis was a new and

2   independent from previous analyses. *Cf.* Compl. ¶¶ 22-26, 32 (detailing additional materials added

3   to the record by Barnum since Redwood Creek's original listing). EPA, of necessity, considered

4   new evidence and made new factual determinations in concluding that Redwood Creek should

5   remain on the 303(d) list of impaired waters.

6        Barnum now challenges EPA's decision to retain Redwood Creek on the 303(d) list of

7   impaired waters pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 551, *et seq.*,

8   which allows any person who has suffered legal wrong to challenge the agency action that has

9   caused the harm. *Id.* § 702. Barnum contends that its business has been injured because EPA

10  acted in an arbitrary and capricious manner in retaining Redwood Creek on the 303(d) list of

11  impaired waters.

12       Barnum owns property along Redwood Creek and has suffered from the immediate

13  diminution in the value of its property as a direct result of the 303(d) listing of the Creek. *See* Able

14  Decl. ¶ 9. The market simply does not value property along an impaired water as highly as it

15  would value property along a water that has not been so designated. *Cf.* James R. May, *The*

16  *Aftermath of TMDL Litigation: Consent Decrees and Settlement Agreements*, SL036 ALI-ABA

17  157 (2006) (noting that the quality of water affects property values).

18       Moreover, as a result of the 303(d) listing and the consequential designation of the property

19  as a part of a threatened and impaired watershed, Barnum is now faced with such stringent land

20  use restrictions that the company has been forced to sell parts of its property, at a loss, prematurely

21  in order to get out of the timber business. *See* Able Decl. ¶ 10. Barnum has completely halted its

22  timber operations on the remainder of its property at Redwood Creek because it is no longer

23  economically viable to continue timber operations in light of the stringent land use restrictions that

24  apply with the Creek's 303(d) designation. *See id.* ¶¶ 5, 10. Because the costs of complying with

25  these land use restrictions are so financially burdensome, Barnum's investment in the property is

26  wasted, as it is now cost prohibitive to continue timber operations. *Id.*

27       Under the applicable T/I rules, Barnum is required to implement and maintain watercourse

28  and lake protection zones (WLPZs) of at least 300 feet (the size of an entire football field) around

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1  the Creek. *See* Cal. Code Regs. tit. 14, § 916.9(f); *see also id.* § 916.9(j). Within these WLPZs,

2  Barnum must refrain from harvesting all hardwoods unless it is necessary to remove a particular

3  hardwood tree for the purpose of enabling conifer regeneration. *Id.* § 916.9(g). Barnum may only

4  then harvest softwood timber. *Id.* Barnum is also required to preserve 85 percent of the tree

5  canopy within 75 feet of the Creek on both sides and 65 percent of the canopy throughout the

6  remainder of the WLPZs. *Id.*

7        Before Barnum can engage in any timber operations on its property at Redwood Creek, the

8  T/I rules require that the company first seek approval on the project by submitting a detailed plan,

9  which outlines specifically how the company will take precautions to avoid all possible disruptions

10  to the environment. *See id.* § 916.9(f). Additionally, Barnum is now entirely forbidden from

11  harvesting the ten largest, and consequently the most profitable, trees within every 330-foot area

12  in the WLPZs. *See id.* § 916.9(i). The T/I rules forbid Barnum from harvesting all trees six inches

13  or more in diameter, all understory and mid-canopy conifers, and all hardwoods outside the WLPZ,

14  in a range of an additional 25-50 feet, depending upon the slope of the terrain. *See id.* § 916.9(c).

15  These restrictions have essentially forced Barnum to shut down its timber operations on this

16  portion of its property and have led to significant devaluation of the property, as timber harvesting

17  is no longer considered its "highest and best use." *See* Able Decl. ¶ 10.

18        Additionally, the T/I rules have interfered with Barnum's ability to use and access its

19  property. *See id.* ¶ 6; *see also* Cal. Code Regs. tit. 14, § 916.9(*l*). This has disrupted vital

20  infrastructure, including access to roads and landings on Barnum's property. Able Decl. ¶ 6. The

21  T/I rules have also imposed a duty upon Barnum to apply treatments upon its property in order to

22  prevent the discharge of sediment into the creek because the T/I rules seek to restore waters, such

23  as Redwood Creek, when they have been designated as impaired. Cal. Code Regs. tit. 14,

24  §§ 916.9(a), 916.9(n). To further the goal of restoring Redwood Creek, the T/I rules also impose

25  seasonal land use restrictions on Barnum's properties, which have completely prevented Barnum

26  from conducting any timber operation during the winter months. *See id.* § 916.9(k)(1).

27  ///

28  ///

Therefore, as a result of EPA's decision to retain Redwood Creek on its 303(d) list of impaired waters, Barnum has suffered economic losses due to the devaluation of its property. The property has been devalued due to the very fact that the Creek has been listed and due further to the imposition of the T/I rules, which were triggered by the 303(d) listing. Able Decl. ¶ 10. These land use restrictions have interrupted Barnum's business venture, as they have interfered with the company's use and enjoyment of its property.

**B.  Procedural History**

In March, 2003, Barnum filed a lawsuit in California Superior Court challenging the 2003 decision by the California State Water Resources Control Board proposing Redwood Creek for listing as an impaired waterbody. The State Water Board had recommended listing Redwood Creek as "impaired by temperature" in 2002, on the grounds that anadromous fish populations in Redwood Creek had experienced significant declines because of excessive water temperature. On February 4, 2003, the State Water Board made its final decision to propose that Redwood Creek should remain on the 303(d) list for impairment by sediment and temperature; EPA subsequently approved the designation. This process was repeated in 2006, at which time Barnum presented additional information undercutting the basis for the Creek's listing. Notwithstanding the added data, the State Water Board recommended that Redwood Creek remain listed; EPA confirmed that recommendation in November, 2006. *See* Complaint ¶¶ 33-35; Declaration of Meredith Weinberg in Support of Defendants' Motion to Dismiss Complaint, Exh. C.

On March 17, 2008, following a prolonged dispute over the administrative record and abortive attempts at substantive briefing, the Superior Court dismissed Barnum's action against the State Water Board on the grounds that Barnum could not obtain complete relief without EPA's joinder as a party to the suit. Accordingly, Barnum now challenges EPA's 2006 303(d) listing decision, as Barnum's case was dismissed in California Superior Court without prejudice to Barnum pursuing relief against EPA in federal court. *See* Complaint ¶ 17.

///

///

///

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

## STANDARD OF REVIEW

Dismissal is appropriate under Rule 12(b)(1) if the district court is found to lack subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). Federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1084 (9th Cir. 2003). Whether a plaintiff has standing to sue is a jurisdictional question. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). In determining whether subject matter jurisdiction exists, the court "is not limited to the allegations in the complaint but may also consider extrinsic evidence and, if that evidence is in dispute, it may weigh the evidence in order to satisfy itself that it has jurisdiction over the case." *Buckley v. Gallo Sales Co.*, 949 F. Supp. 737, 740 (N.D. Cal. 1996). The burden of proof in a 12(b)(1) motion is on the party asserting jurisdiction. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

## SUMMARY OF ARGUMENT

EPA's motion to dismiss Barnum's action is without merit. EPA makes three wrong assertions regarding the justiciability of Barnum's claims. (1) EPA incorrectly asserts that Barnum's claims are time barred; however, Barnum's challenge to EPA's 2006 decision to retain Redwood Creek on the 303(d) list of impaired waters was filed in 2008, well within the six-year statute of limitations. (2) EPA denies that Barnum has standing; however, Barnum meets the constitutional standing requirements because it has suffered a concrete injury, in the form of significant restrictions on the use and enjoyment of its property, that are caused ultimately by EPA's 2006 listing decision, and that can be redressed by a favorable decision from this Court. (3) EPA further asserts that Barnum's action is not ripe because Barnum allegedly has suffered no injury. Yet Barnum is presently injured by EPA's listing decision; that injury will only be exacerbated if judicial review of Barnum's claims is deferred. Because Barnum continues to be injured by Redwood Creek's listing, and because its challenge to that listing is fit for adjudication, Barnum's action is ripe. Accordingly, EPA's motion to dismiss should be denied.

///

///

# ARGUMENT

## I

## BARNUM'S CAUSE OF ACTION FALLS WITHIN THIS COURT'S JURISDICTION, AND IS RIPE FOR ADJUDICATION

### A.  Barnum's Claims Are Timely

#### 1.  The Final Agency Action Challenged in Barnum's Complaint Is EPA's Decision To Retain Redwood Creek on the 2006 List of Impaired Waters

Every civil action commenced against the United States must be filed within six years after the right of action accrues. *See* 28 U.S.C. § 2401(a). EPA asserts that Barnum's cause of action accrued in 1998 when EPA first established a TMDL for Redwood Creek, and thus that the limitations period for challenging that action expired in 2004. Barnum's challenge, however, is not concerned with the 1998 TMDL listing, as EPA asserts. Rather, Barnum's challenge concerns EPA's 2006 decision to retain Redwood Creek as an impaired water. If Barnum succeeds on its claim that EPA acted in an arbitrary and capricious manner by retaining Redwood Creek as an impaired waterbody, then the 1998 TMDL will, consequently, be rendered invalid. Nevertheless, that secondary result does not change the fact that the agency action challenged by Barnum's complaint is EPA's November 30, 2006, retention of Redwood Creek on the 303(d) listing, on the basis of an administrative record that, in comparison to the 1998 administrative record, contains substantial and new information. Barnum therefore had six years, from November 30, 2006, to file its complaint against EPA. Barnum filed its complaint on April 15, 2008, well within the limitations period.

A right of action under the APA accrues from the date of the final agency action. *Envtl. Prot. Info. Ctr. v. Pacific Lumber Co.*, 266 F. Supp. 2d 1101, 1121 (N.D. Cal. 2003). An agency action is considered final if the action marks the consummation of the decisionmaking process, and determines the rights or obligations of the parties, or is an action from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). In other words, the finality of an agency action turns on whether the action is a definitive statement of the agency's position and whether it has a direct and immediate effect on the day-to-day business of the complaining party. *F.T.C.*

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

*v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-40 (1980).  There exists a strong presumption in favor of judicial review of agency decisions.  *E.g.*, *Barlow v. Collins*, 397 U.S. 159, 165-67 (1970); *Abbott Labs. v. Gardner*, 387 U.S. 136, 140-41 (1967).

In this case, EPA's 2006 decision to retain the listing of Redwood Creek as an impaired waterbody constitutes a final agency action because (1) the decision is meant to be final and authoritative on the question of whether the Creek should remain listed as impaired,  and (2) the decision has a direct and negative effect on the use and enjoyment of Barnum's property.  The action is final because there is no indication that the decision was, in any way, merely tentative or interlocutory in nature.  *See Bennett*, 520 U.S. at 177-78.  Rather, the decision represented the consummation of EPA's decisionmaking process on the issue of whether, as of November, 2006, Redwood Creek was a waterbody impaired by sediment and temperature.  Because the listing of Redwood Creek triggers certain restrictions on land use, EPA's 2006 retention decision had a direct and adverse impact on the use and enjoyment of Barnum's property.  *See Nw. Envtl. Advocates v. EPA*, Nos. 03-74795, 06-17187, 06-17188, 2008 WL 2813103, at *10-*11 (9th Cir. July 23, 2008) (agency denial of petition for repeal of regulation provides timely basis for challenge to the regulation, even where a direct challenge to the regulation's passage would be time barred).  *Cf. Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv*., 475 F.3d 1136, 1140 n.2 (9th Cir. 2007) (analyzing "the general validity of [a 1996 Service] Policy" as applied in a June, 2003, agency action, challenged by a complaint filed in November, 2003).

As noted above, Barnum's use and enjoyment of its property are severely impinged by EPA's designation and retention of Redwood Creek as an impaired water, which trigger the application of the T/I rules, subjecting Barnum to rigorous additional harvesting and timber growing restrictions that would not be required but for EPA's actions.  *See* Cal. Code Regs. tit. 14, § 916.9(f), (g) & (t).  Specifically, as a result of EPA's decision, Barnum must:  (1) implement and maintain WLPZs of approximately 300 feet along the sides of the Creek; (2) preserve more trees on its property; (3) spend a great deal of time and money identifying the 10 largest trees in every 330 feet along the Creek, in order to preserve those trees; (4) abide by additional time-of-year limitations, which have restrictive impacts on Barnum's forestry operation; and (5) refrain from

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

harvesting salvage timber (blown down or dying trees). *See* Able Decl. ¶¶ 5-8. These restrictions not only remove significant acreage from production, they also disrupt vital infrastructure, such as roads, landings, logging chances, and access to the property. *Id*. ¶ 6.

Barnum's day-to-day business activities are disturbed, as the company must now expend resources on compliance in order to continue utilizing its property. These restrictions place difficult financial burdens on Barnum, including increased logging costs, the cost of developing new roads to bypass WLPZ areas, and the depreciation of its timber investment. *Id*. Indeed, these restrictions have reduced the value of Barnum's property such that the company, and other similarly situated parties, have begun to sell their property prematurely in order to get out of the timber business; in doing so, they must accept fair market value for less than the property's "highest and best use;" thus they are forced to accept lower prices in order to cut their losses.

The finality element must be interpreted in a "pragmatic and flexible manner." *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006); *Or. Natural Res. Council v. Harrell*, 52 F.3d 1499, 1504 (9th Cir. 1995); *Cal. Dep't of Educ. v. Bennett*, 833 F.2d 827, 833 (9th Cir. 1987). Because the use and enjoyment of Barnum's property have been significantly limited owing to the restrictions triggered by EPA's listing retention decision, that decision constitutes final agency action. Redwood Creek's designation carries the force of law and creates onerous legal consequences for Barnum. To hold Barnum's action as time barred would place many agency decisions beyond judicial review; challenges to agency action on petitions for new rulemaking would have to be dismissed simply because the rule sought to be changed had been enacted more than six years prior. That outcome is irreconcilable with the general presumption in favor of judicial review of agency action.

For the foregoing reasons, EPA's 2006 decision to retain Redwood Creek on the 303(d) list of impaired waterbodies constitutes a final and reviewable agency action. Accordingly, Barnum's action challenging that decision is timely.

## 2. The Doctrine of Equitable Tolling Applies to Barnum's Claim

Assuming *arguendo* that Barnum's cause of action accrued in 1998, the doctrine of equitable tolling ensures that Barnum's complaint is timely. Equitable tolling is a remedy that

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

Pl.'s Opp'n to Def.'s Motion to Dismiss
Complaint—No. 3:08-cv-01988-WHA    - 9 -

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

allows a court to deem a filing to have been made in a timely manner, despite the fact that it was not, when it would be equitable to do so. *See Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). The Supreme Court has observed that the same rebuttable presumption of equitable tolling, applicable to suits against private defendants, should apply to suits against the United States. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). *See Clymore v. United States*, 217 F.3d 370, 374 (5th Cir. 2000) (holding equitable tolling to be applicable to Section 2401(a) limitations period). *Cf. O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (equitable tolling generally available unless inconsistent with text of limitations statute).

Equitable tolling typically is available in instances "'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period.'" *Young v. United States*, 535 U.S. 43, 50 (2002) (quoting *Irwin*, 498 U.S. at 96). *Cf. Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006) (applicability of equitable tolling depends upon "whether it would be unfair or unjust to allow the statute of limitations to act as a bar"). In cases where the plaintiff has actively sought redress but in a procedurally defective manner, equitable tolling has been allowed. *See, e.g.*, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (plaintiff's timely filing of a defective class action tolled the limitations period as to the individual claims of purported class members). Equitable tolling has also been allowed where a claimant brings suit under a federal statute in the wrong court. *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424 (1965) (tolling Federal Employers Liability Act limitations period where plaintiff filed timely complaint in court of wrong venue); *Herb v. Pitcairn*, 325 U.S. 77 (1945) (same).

Here, EPA asserts that Barnum's cause of action accrued in 1998 and that the statute of limitations bars its 2008 complaint; however, Barnum originally filed suit in March of 2003, to challenge the listing or Redwood Creek, in California Superior Court. Therefore, even if this Court accepts EPA's contention that Barnum's action accrued in 1998, the limitations period should be equitably tolled for the time in which Barnum had sought relief in California Superior Court. *Cf. Burnett*, 380 U.S. at 434-35 ("[W]hen a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit."); *Harris v.*

1    *Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008) (equitable tolling intended to " 'prevent the unjust

2    technical forfeiture of causes of action' ") (quoting *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir.

3    2004)).  Barnum has not sat on its rights, but has diligently sought justice for over five years.

4    Accordingly, if it is found that Barnum's cause of action accrued in 1998, this Court should

5    equitably toll the statute of limitations to bring Barnum's action within the six-year limitations

6    period provided for in 28 U.S.C. § 2401(a).

7    **B.    Barnum Has Standing To Challenge EPA's Approval**
     **of Redwood Creek as an Impaired Waterbody**

8
9          **1.    Barnum Has Suffered Concrete Injuries as a Direct Result of the**
                    **Challenged Agency Action That Can Be Redressed by This Court**

10          To establish standing under Article III of the Constitution, a plaintiff must show that it has

11   suffered a concrete and particularized injury that is fairly traceable to the defendant's actions and

12   that is likely to be redressed by favorable judicial decision.  *E.g.*, *Massachusetts v. EPA*, 127 S. Ct.

13   1438, 1453 (2007); *Bennett*, 520 U.S. at 167.  In other words, standing exists where the challenged

14   action directly causes a concrete injury, so long as the court can provide redress.  *See Coho Salmon*

15   *v. Pacific Lumber Co.*, 61 F. Supp. 2d 1001, 1014 (N.D. Cal. 1999).

16          Because Barnum has suffered particularized and concrete injuries, including the significant

17   diminution of the use and enjoyment of its property, as a result of EPA's listing and retention of

18   Redwood Creek, and because these injuries can be redressed by a favorable decision of this Court,

19   Barnum has standing.

20          **a.    EPA's Listing of Redwood Creek Has Caused**
                    **Barnum To Suffer Real and Concrete Injuries**

21

22          An injury-in-fact occurs whenever a plaintiff suffers a concrete and particularized injury

23   that is either actual or imminent.  *Massachusetts*, 127 S. Ct. at 1453.  Barnum's injury-in-fact stems

24   from EPA's decision to list and retain Redwood Creek as an impaired water, which actions injure

25   Barnum's legally protected interests in its property along Redwood Creek.  *See Lujan v. Defenders*

26   *of Wildlife*, 504 U.S. 555, 560 (1992) (stating that an injury-in-fact is the "invasion of a legally

27   protected interest").  Landowners like Barnum have a protected property interest in the use and

28   enjoyment of their private property, which constitutes a cognizable injury for standing purposes.

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

*San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."). *See* William H. Taft, *The Right of Private Property*, 3 Mich. L.J. 215, 215 (1894) ("As far back as we can go in the history of the common law of England, the right of property of the freeman was theoretically inviolate.").

As discussed above, California's T/I rules mandate stringent land use restrictions for the protection and restoration of trees in watersheds deemed threatened or impaired; these land use restrictions limit Barnum's property and business operations and are triggered by EPA's designation of Redwood Creek as an impaired water. *See* Cal. Code Regs. tit. 14, § 916.9. Accordingly, EPA's retention of Redwood Creek on the list of impaired waters has directly resulted in restrictions on how Barnum may access and use its property.

Specifically, Barnum is now required to implement and maintain WLPZs on its property; these WLPZs restrict use of approximately 300 feet, the size of a football field, around the creek. *See id.* § 916.9(f). These restrictions remove significant acreage from production; they require Barnum to retain 85 percent of the canopy within 75 feet of the creek on both sides, and 65 percent of the canopy within the remainder of the WLPZ. *Id.* § 916.9(g). Within the WLPZ, Barnum is entirely prohibited from harvesting hardwoods, except if the harvesting is done for the exclusive and limited purpose of enabling conifer regeneration. *See id.* This, essentially, amounts to a complete ban on the harvesting of all bigleaf maple, California black oak, California buckeye, California-laurel, canyon live oak, giant chinkapin, Oregon white oak, Pacific madrone, Tanoak, Valley oak, white alder, and any other hardwood trees located within the WLPZ. *Id.* In addition Barnum must ensure that the ten largest conifers are retained and preserved for every 330 feet in the WLPZ along the Creek. *Id.* § 916.9(i). This limitation not only precludes Barnum from harvesting the most valuable trees within the WLPZ, it also causes financial harm to the company's timber operations by requiring the company to expend great time and resources identifying and preserving the largest trees for the Creek's entire course on Barnum's property. Able Decl. ¶ 7.

Because Redwood Creek is listed as impaired, Barnum is now prohibited from using its property within 300 feet of the Creek unless it first submits a plan, and receives state approval, which details specific and enforceable precautions that the company will take to avoid any activity

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

within the WLPZ that may potentially disturb the environment. *See* Cal. Code Regs. tit. 14, § 916.9(h)(1). These restrictions also prohibit Barnum from utilizing existing crossings over the Creek, unless the state approves a plan detailing specific procedures by which the company will modify those crossings or otherwise treat them in order to minimize the risk of runoff into the water. *See id*. § 916.9(h)(2). Likewise, Barnum is now prohibited from building any new crossings over the Creek unless the state approves a plan detailing specifications for the construction, so as to prevent habitat degradation, water velocity increases, hindrance of fish passages, and all other potential impairments of the water's beneficial uses. *See id*. § 916.9(h)(3). These restrictions specifically stop Barnum from carrying out planned timber operations and impair the company's right easily to access, use, and enjoy its property.

Barnum is also required by law to apply treatments throughout the WLPZ to stabilize soil, minimize erosion, and prevent the discharge of sediment into the Creek. *See id*. § 916.9(n). This necessarily requires Barnum to treat and prevent waterborne transport of sediment and concentration of runoff that results from timber operations. *See id*. § 916.9(n)(2). These requirements cost Barnum money and make the maintenance of its property more expensive. Able Decl. ¶¶ 9-10.

In addition to the stringent land use restrictions in the WLPZ around Redwood Creek, Barnum's property rights are impinged by further restrictions beyond the WLPZ area, also triggered by EPA's decision to list the Creek as an impaired water. The restrictions provide for an additional zone of protection, extending beyond the WLPZ for an additional 25 to 50 feet, depending on the slope of the terrain. Cal. Code Regs. tit. 14, § 916.9(c). In this zone, Barnum is now required to retain all understory and mid-canopy conifers and hardwoods. *Id*. Barnum is also specifically prohibited from removing any tree six inches or more in diameter. *Id*. This results in the additional loss of valuable timber harvesting opportunities. *See* Able Decl. ¶ 7.

Moreover, with the listing of Redwood Creek as an impaired water, seasonal restrictions apply to Barnum's land. *See* Cal. Code Regs. tit. 14, § 916.9(k). These restrictions prohibit all timber operations in the winter unless the state has approved a special winter period operating plan.

///

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1  *Id.* Additionally, Barnum is prohibited from reconstructing any of its logging roads, tractor roads,

2  or landings during the winter months. *See id.* § 916.9(k)(1).

3      In sum, Barnum has incurred great costs in complying with the land use restrictions

4  triggered by EPA's listing and retention of Redwood Creek as an impaired water. These

5  restrictions place significant financial burdens on Barnum by restricting the harvesting of timber,

6  the planning of future harvests, and the restocking of buffer areas. The restrictions also create

7  zones of unmanageable land by limiting access and by necessitating new road construction to

8  bypass arbitrary WLPZ areas, as well as by increasing logging costs and causing delays of

9  approval on logging permits that consequently affect the price of timber and discourage the use of

10  the property for timber production. Able Decl. ¶ 9. These negative effects have greatly reduced

11  the value of Barnum's property for timber management. *Id.* These injuries are concrete and have

12  had very real, immediate, and ongoing impacts. *Id.* ¶¶ 6-10.

13      Finally, Barnum is injured by the immediate diminution of the value of its property. Not

14  withstanding the diminution in property values due to the burdensome land use restrictions, which

15  remain in force owing to Redwood Creek's continued 303(d) listing, Barnum has suffered an

16  additional and independent injury in the devaluation of its property due to EPA's listing of

17  Redwood Creek as an impaired water. *See San Diego County Gun Rights Comm.*, 98 F.3d at 1130.

18  *See* SL036 ALI-ABA 157 (noting that the cleanliness of water affects property values).

19      Accordingly, Barnum has suffered concrete, particularized, and cognizable injuries.[1]

20  ///

21  ///

22  ///

23

24  [1] EPA contends that Barnum has failed to describe its injuries and their connection to the 303(d) listing with the requisite specificity. But as the Supreme Court has made clear, prior to summary

25  judgment, a court may properly infer specific allegations from general allegations in the complaint. *See Bennett v. Spear*, 520 U.S. 154, 168 (1997) ("'At the pleading stage, general factual allegations

26  of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the

27  claim."'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). In any event, the Able Declaration, discussed *passim*,

28  provides the requisite specificity.

**b. EPA's Listing of Redwood Creek as an Impaired Water Body Has Directly Caused Barnum's Harm**

To establish the "fairly traceable" component of standing, a plaintiff must show some minimal causal connection between the injuries asserted and the action challenged in the complaint. *Massachusetts*, 127 S. Ct. at 1453. The test to determine fair traceability is whether the plaintiff shows a "substantial probability" that the challenged action caused the alleged harm. *Warth v. Seldin*, 422 U.S. 490, 504 (1975). This is a "relatively modest" burden to prove. *Bennett*, 520 U.S. at 171. The test can be met even when the harm is caused indirectly or through the intervening act of a third party. Russell W. Galloway, Jr., *Basic Justiciability Analysis*, 30 Santa Clara L. Rev. 911, 923 (1990). What matters is not the length of the chain of causation, but rather whether the links in the causal chain leading to the proffered injury are "not hypothetical or tenuous." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002). "While . . . it does not suffice if the injury complained of is the result of the *independent* action of some third party not before the court, that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett*, 520 U.S. at 169 (citations, brackets, and quotation marks omitted).

But for EPA's designation of Redwood Creek as an impaired water, Barnum would not be facing burdensome land use restrictions on its property. Due to EPA's designation and retention of Redwood Creek as an impaired water, the California Board of Forestry considers Barnum's property to be threatened and impaired, which triggers the T/I rules discussed above. *See* Able Decl. ¶ 5. *See also* CDF at 2. Barnum's continuing subjection to the Board's T/I rules is the result of EPA's 2006 retention decision. The causal connection between the injury and the decision is neither hypothetical nor tenuous. Barnum's injuries are therefore fairly traceable to that decision.

**c. This Court Could Redress Barnum's Injury by Ordering EPA To Delist Redwood Creek from the CWA Section 303(d) List of Impaired Waters**

A plaintiff's injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Bennett*, 520 U.S. at 167. Given that this Court can invalidate EPA's decision to retain Redwood Creek on the 303(d) list of impaired

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1   waters, *see* 5 U.S.C. § 706(2) (authorizing court to "hold unlawful and set aside agency action"),

2   which is the basis for the continuing imposition of California's T/I rules, a favorable decision by

3   this Court would relieve Barnum from burdensome land use restrictions.  If EPA's retention

4   decision is deemed to be arbitrary and capricious, California's T/I regulations will no longer apply

5   to Barnum's property and Barnum will be alleviated from the burdens of compliance.  Moreover,

6   if this Court should set aside EPA's actions, Barnum's economic losses, stemming from the

7   diminution in its property values, would be redressed as the market would value the property

8   greater than it currently is valued.  *See* SL036 ALI-ABA 157 (noting that water quality affects

9   property values).

10  **C.   Barnum's Claim Is Ripe for Adjudication and Immediate Resolution**

11       EPA's decision to retain Redwood Creek on the 303(d) list of impaired waters is ripe for

12  judicial review.  EPA's decision has led to the current injuries Barnum suffers.  Unless this Court

13  finds that EPA acted arbitrarily and capriciously, Barnum will continue to suffer injury.  Therefore,

14  this case is currently ripe and could never be more ripe.

15       Whereas the standing inquiry asks "who" may bring a claim, ripeness asks "when" a claim

16  may be brought.  *Okinawa Dugong v. Gates*, 543 F. Supp. 2d 1082, 1096 (N.D. Cal. 2008).  The

17  ripeness doctrine "protects against premature adjudication of suits in which declaratory relief is

18  sought," *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (en banc), in order

19  to prevent "entanglement in theoretical or abstract disagreements that do not yet have a concrete

20  impact on the parties." *18 Unnamed "John Smith" Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir.

21  1989).  To determine whether a claim is ripe, a court "evaluate[s] both the fitness of the issues for

22  judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*,

23  387 U.S. at 149.  The judiciary's ultimate determination of ripeness depends on a pragmatic

24  balancing of those two variables and the underlying interests which they represent.  *See* 4 K. Davis,

25  Administrative Law Treatise § 25:15 at 405 (2d ed. 1983).  Courts confronted with close questions

26  of ripeness are appropriately guided by the presumption of reviewability.  *See INS v. St. Cyr*, 533

27  U.S. 289, 298 (2001) (observing "strong presumption in favor of judicial review of administrative

28  action"); *see also Okinawa*, 543 F. Supp. 2d at 1089.

### 1.    Barnum's Claim Is Fit for Judicial Review

The fitness prong of the ripeness inquiry addresses a court's ability to resolve the issue presented. *See Abbott Labs.*, 387 U.S. at 148-49. In considering the fitness of a claim, several factors are probative of a cases ripeness; perhaps most prominent among them is the degree to which the issues raised are legal or, instead, some mixture of law and fact. *See id.* at 149. *See also Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162 (1967); *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812 (2003). Generally, a challenge to an agency action will be considered fit for judicial review only after the facts have been fully fleshed out. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990).

In the present case, Barnum's claim will be adjudicated, based upon an administrative record, as to whether EPA acted in an arbitrary and capricious manner in retaining Redwood Creek as an impaired water. There are no factual matters that may be developed to help this Court in the consideration of that issue. Indeed, the record of this case has been fully fleshed out over the past decade. In that time, the California State Water Resources Control Board and EPA contemplated whether to designate and retain Redwood Creek as impaired. In the most recent iterations, the State Water Board recommended that EPA list the Creek as impaired and EPA formally announced its retention decision in November, 2006. Accordingly, no other event or action would make this case any more fit for judicial review. Barnum's injuries will persist unnecessarily if judicial review is deferred. There is no indication that EPA's decision was intended to be anything other than final. Given that no additional facts are helpful in the resolution of the record-review issues raised here, and given the strong presumption of reviewability, the fitness prong has been met.

### 2.    Barnum Would Suffer Continuing Injury If Its Claim Were Not Heard Now

The second prong of the ripeness inquiry requires the Court to consider the hardships that Barnum will suffer if the company is denied the chance to have its case adjudicated in this forum. *See Abbott Labs.*, 387 U.S. at 148-49. Barnum is currently suffering significant hardships due to the listing decision; particularly, Barnum is injured by the diminution in its property values and by the imposition of state land use regulations and restrictions, which were triggered by and remain

P<small>ACIFIC</small> L<small>EGAL</small> F<small>OUNDATION</small>
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

in effect owing to Redwood Creek's impaired designation. Able Decl. ¶ 5; CDF at 2. Therefore, Barnum is currently suffering and will continue to suffer significant hardships should judicial review be withheld.

### CONCLUSION

EPA's motion for dismissal is based on the three erroneous assertions. EPA wrongly asserts that Barnum: (1) challenges the 1998 TMDL for Redwood Creek; (2) has not been harmed by EPA's actions, and (3) cannot obtain redress for its injuries. EPA's assertions are without merit. Barnum is not challenging the 1998 TMDL listing, but rather EPA's 2006 decision to retain Redwood Creek on the 303(d) list of impaired waters. Barnum has suffered concrete injuries as a direct result of the listing and retention of Redwood Creek on the 303(d) listing. Further, this Court can redress Barnum's injuries through invalidation of that listing and retention.

Accordingly, Barnum respectfully requests that EPA's motion to dismiss be denied.

DATED: August 20, 2008.

Respectfully submitted,

JOHN H. FINDLEY
PAUL J. BEARD II
DAMIEN M. SCHIFF

By    /s/ Damien M. Schiff
          DAMIEN M. SCHIFF

Attorneys for Plaintiff

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

**Exhibit 1**

## Process for Threaten or Impaired Watershed Regulations Review[1]

# Staff Draft March 24, 2008
# For Consideration at the April 2, 2008
# Forest Practice Committee Meeting

**Executive Summary:**  California Forest Practice Rules related to protection of watersheds with anadromous salmonid species, termed the "Threatened or Impaired Watershed" rules (T/I rules), are under review by the State Board of Forestry and Fire Protection. The T/I rules are being reviewed for determining their adequacy in protecting the species, meeting the Forest Practice Act, and to establish permanent rules as the current rules expire on January 1, 2010.

The Board's Forest Practice Committee will conduct the review and has drafted a rule review process. The review process involves evaluating groups of similar rules against specific criteria, including current science literature.  Each of the five rule groups would have at least three public meetings.

**Meeting sequence**



Review of current scientific literature is important part of the rule validation process.  To facilitate an expedited review of science literature, submission by stakeholders of science literature related the non-riparian sections of the T/I rules should be delivered to the Board by May 2, 2008.

The FPC intends to complete the review by January 2009.    Following the review the Board will begin any regulatory adoption procedures.  Final adoption of any regulatory amendments would be completed by October 2009.

---

[1] Threaten or Impaired Watershed Regulations is board designated term for a suite of regulations within the California Forest Practice Rules that address requirements for protection of anadromous salmonid species during timber harvesting operations.  See **Appendix 1** for the list of relevant regulations.

**Background:** In 2000, the California Forest Practice Rules were amended by the State Board of Forestry and Fire Protection (Board) in 11 rule sections for protection of watersheds with anadromous salmonid species.   They were termed the "Threatened or Impaired Watershed" rules (T/I rules) and included rules for projects in watersheds listed as impaired under the 303(d) listing process. These rule changes were done in part as a response to National Marine Fishery Services deliberations on listing steelhead species. They apply to commercial forest harvesting operations on private land and State Forest in any watershed where listed anadromous salmonids are found.

Since their adoption in 2000, these regulations have been modified and extended through Board action four times and are currently set to expire on December 31, 2008. Board rulemaking action extending the rules for an additional year will noticed on April 11, 2008.  Minor amendments were made to these rules in 2006 regarding plan review requirements.

Substantive provisions of the T/I regulations were adopted by the Board in 2007 for facilitating incidental take of coho salmon through DF&G §2112 regulation in a separate regulatory action.  The rules adopted in 2007 apply only to coho salmon watersheds, which are subset of the T/I rules geographic area, and they do not have an expiration, or "sunset" date.

The T/I rules have not been comprehensively reviewed since their inception.  Such a review is statutorily required under Public Resource Code 4553.  The Board intends to review the existing all anadromy T/I rules for purposes of determining their adequacy in protecting the species and meeting other goals under Article 1 of the Forest Practice Act. To facilitate at this review the Board to date has

1.  appointed a Technical Advisory Committee to oversee a contracted review of current scientific literature on forest management effects on the riparian zone of anadromous salmonid fisheries.

2.  directed staff to design an additional review process to facilitate review of the T/I rules beyond direct effects in the riparian zone.

3.  appointed other groups including the Monitoring Study Group  and the Road Rules Committee to in part   provide information on forest management effects on anadromous salmonid fisheries.

4.  received testimony at Board meetings from state and federal agencies regarding the adequacy of the forest management regulations, specifically the Threatened or Impaired watershed regulations.

5.  adopted "coho specific" regulations for take under CESA in 2007 in cooperation with Department of Fish and Game.

**Project Goals:**

- Conduct a review of the existing all anadromy T/I rules for purposes of determining their adequacy in protecting the species and meeting other goals under Article 1. of the Forest Practice Act.

- Conduct and complete review consistent with this review process.

- Following completion of review, develop regulatory amendments as needed.

- Completed rule amendments for regulatory noticing action on March 2009.

- Final adoption of modified regulations by Board in September 2009.

- Rules would become effective on January 2010.

- Develop regulations, when consistent with the Board's authorities, that support other regulatory agency needs (Regional Water Boards, DFG, NMFS)

- Rules adopted shall be permanent with no expiration date.

**General information:**

- A review process, described below, is established to ensure a uniform and complete review of the T/I rules.  The Board's Forest Practice Committee will conduct a review consistent with this process.

- Routine public stakeholder and agency workshops would be held to review each rule

Staff Draft March 24, 2008                                                                                        3

section.  Stakeholder comments will be accepted at any time during the rule review process or the official regulatory noticing period.

- Public stakeholder meetings will be held to review each T/ rule or rule group.  The meetings will be formally noticed in accordance with the open meeting act requirements. Notice will include e-mailing or hardcopy mailing to a Board prepared stakeholder list and posting on the Board web site.

- Forest Practice Committee members, and other Board members, will attend stakeholder meetings and provide direction and to ensure proper decorum.

- The Forest Practice Committee wishes to obtain consensus opinions and recommendations from stakeholders when possible.  Non-consensus opinions shall be noted in minutes.

- Forest Practice Committee will consider whether to apply any recommendations coming from the T/I rules to the recently adopted "coho" regulations.

- Forest Practice Committee will review progress of rule review at each regularly scheduled meeting.

- Responsible agencies will be contacted inviting their participation and comments prior to review of any T/I rule.

- All staff information background articles and meeting minutes shall be posted on the board web in a highly visible link on the front page of the web site.

- Retain T/I current organizational format when possible and preferred, with consideration from road rule committee suggestions.


**Review process:  See Flow Chart in Appendix 2**

**1.  Rule groups:** T/I rules as is currently displayed in the Forest Practice Rules will be grouped according to similar topics (**see Appendix 3**).

**2. Time frame:**  FPC will adopt a time frame/schedule to review groups of rules. (See

**Appendix 4 Rule Review Time Frame**).  Discussion and review of any T/I rule within a group may be extended beyond the time frames established for its review, as directed by the Forest Practice Committee.  Rules will be reviewed sequentially or concurrently if necessary or logical.

**3.  Meetings:**  Each rule section or group of rule sections will have up three review meetings: two Forest Practice Committee meetings and a one stakeholder meeting.

**Meeting sequence**

| 1. Initial FPC meeting | ⟶ | 2. Stakeholder meeting | ⟶ | 3. Final FPC meeting |

The number and content of meetings for each rule group at a minimum includes:

**1ˢᵗ  FPC Meeting:** An initial introductory meeting at the Forest Practice Committee regular scheduled monthly meeting. Groups of rules will be presented at the initial introductory Forest Practice Committee meeting.  At a minimum, the meeting will include

    a.  the text of the Forest Practice Rules being reviewed;

    b.  public comments and revision suggestions received to the Board as of date of FPC meeting;

    c.  supporting technical papers and science reports presented to Board staff and/or assembled by the Board staff;

    d.  assignment of technical assistance teams, including any science review team such as the TAC;

    e.  direction from FPC on relevant key questions for science review and identification of "rule review criteria"; and

    f .  new public comment.

**1ˢᵗ  Stakeholder Meeting:**  A stakeholder meeting conducted before the next regularly monthly Forest Practice Committee meeting. This meeting will be held on the Monday prior to the regularly scheduled Tuesday Forest Practice Committee meeting.  Stakeholder meeting will include at a minimum:

    a.  presentations of a report from technical review teams;

    b.  evaluation of  "rule review criteria" stated in this charter applicable to the rule

section; and

d.  public input.

**2nd FPC Meeting:**  A concluding meeting at the regular scheduled Forest Practice Committee meeting following the first meetings described above.  The final meeting would include:

a. staff update to the Forest Practice Committee on previous meetings;

b.  completion of any items held over from previous two meetings;

c.  draft rule proposals;

d.  public input; and

e.  Forest Practice Committee decisions or recommendations.

Stakeholders meetings will be formally noticed to the BOF contact list established for the project.   Individual invitations will be offered to responsible agencies including the Central Valley Regional Water Quality Control Board, National Marine Fisheries Service, Department of Fish and Game, Central Coast Regional Water Quality Control Board, North Coast Region Quality Water Control Board, and State Water Quality Control Board.

**4.   Technical review and science literature submissions:**   Science, policy, legal, regulatory or other types review will be conducted as part of the overall T/I.  Review requests will identify and assigned by the FPC to the Technical Advisory Committee (TAC) or other group (i.e. Monitoring Study Group, road rules committee, interagency mitigation and monitoring program, legal counsel) at each initial FPC meeting.

The TAC will be reviewing additional science literature on T/I rules that are not related to riparian buffer function (literature on riparian buffer function is already being reviewed as part of the contracted literature review contract.). FPC will be specific in terms of the nature of the topics requested for non-riparian science review and will provide key questions for which science review is requested.

**To facilitate an expedited review of technical science literature, submission by stakeholders of science documents should be delivered to the Board by May 2, 2008.**
Literature should be submitted to the following address:

Board of Forestry and Fire Protection
Attn: Christopher Zimny
Regulations Coordinator
P.O. Box 944246
Sacramento, CA  94244-2460

or hand delivered to:

Board of Forestry and Fire Protection
Room 1506-14
1416 9th Street
Sacramento, CA

or sent via facsimile to:

(916) 653-0989

or sent via e-mail a to:

board.public.comments@fire.ca.gov

Evaluation of technical information provided by any technical assistance teams will be conducted and presented to FPC prior to any decision/recommendations.  Science review teams will focus on assessing certainty of existing science and report back on both certainty of findings and those with less certain information. Acceptable science literature to be included for this T/I review will be screened by TAC using screening criteria created for the contracted literature review.

**5. Rule review criteria:**  Each rule or a rule group will be evaluated in public by staff and with Forest Practice Committee and stakeholders input. Each rule section or group of rules will be assigned rule review criteria by the FPC (see **Appendix 5** for assigned criteria for each rule).  The criteria used for the evaluation will include the following:

    a.  establishment of problem and necessity;
    b.  specific purpose of rule as currently written;
    c.  science literature supporting regulatory prescriptions;
    d.  identification of strengths and weakness of rule sections from a science basis;
    e.  FPR organization;
    f.  duplication with existing rules;

e.  economic and fiscal impact;

f.  legal perspective;

g.  environmental impacts of the rule section; and

h.  consistency with other regulatory agency needs.

**6.  Rule amendment and alternatives:**  Potential rule amendments will be developed by staff and presented to the Forest Practice Committee following the evaluation stated above.   Alternatives will be identified.   Stakeholder shall be provided opportunity to provide alternatives at this point in time to the Forest Practice Committee.

**7.  FPC rule recommendations:** FPC will make recommendations on any proposed rule amendments to staff who will prepare those amendments.   Amendments will be incorporated into a complete regulatory package that will be presented to the full board at the culmination of the T/I review process beginning in January 2009.



| Appendix 1 |
|---|

**Regulations related to "Watersheds with Threatened or Impaired Values"**
**Title 14 of the California Code of Regulations**

<u>(All anadromy)</u>

| | |
|---|---|
| § 895.1 | Definitions |
| § 898 | Feasibility Alternatives |
| § 898.2 | Special Conditions Requiring Disapproval of Plans |
| § 914.8 [934.8, 954.8] | Tractor Road Watercourse Crossing |
| § 916 [936, 956] | Intent of Watercourse and Lake Protection |
| § 916.2 [936.2, 956.2] | Protection of the beneficial Uses of Water and Riparian Functions |
| § 916.9 [936.9, 956.9] | Protection and Restoration in Watersheds with Threatened or Impaired Values |
| § 916.11 [936.11, 956.11] | Effectiveness and Implementation Monitoring |
| § 916.12 [936.12, 956.12] | Section 303(d) Listed Watersheds |
| § 923.3 [943.3, 963.3] | Watercourse Crossings |
| § 923.9 [943.9, 963.9] | Roads and Landings in Watersheds with Threatened or Impaired Values |

<u>(Coho watersheds only)</u>

| | |
|---|---|
| § 916.9.1 [936.9.1] | Minimization and Mitigation Measures for Protection and Restoration in Watersheds with Coho Salmon |

§ 916.9.2  [ 936.9.2]                    Additional Measures to Facilitate Incidental Take
                                         Authorization in Watersheds with
                                         Coho Salmon

§ 916.11.1 [936.11.1]                    Monitoring for Adaptive Management in
                                         Watersheds with Coho Salmon

§ 923.9.1 [943.9.1]                      Minimization and Mitigation Measures for
                                         Roads and Landings in Watersheds with
                                         Coho Salmon

§ 923.9.2 [943.9.2]                      Additional Measures to Facilitate Incidental Take
                                         Authorization in Watersheds with Coho Salmon

## Appendix 2

**Rule review process flow chart**



continue cycle

| Appendix 3 |
|---|

**Major topics of the 2000 T/I rules and the subsequent amendments**

**Group #1**

    **Goals/Intent**

- **intent language specificity for beneficial use protection:** (916, 916.2): goals relevant to entire watershed geographic areas (riparian zone and upland)

    **Watershed Definitions**

- **new definitions** (895.1): includes specific riparian zone characteristics, and operating surface conditions (for all areas).

**Group #2**

    **Geographic Scope**

- **new definitions** (895.1): includes T/I watershed definition.

    **Plan Preparation**

- **plan content , consultation requirements, disapproval thresholds** (898.2)

**Group #3**

    **Cumulative Impacts**

- **cumulative effects analyses for entire watershed** (898.1,916.9 b)
- **Assessments in Section 303(d) Listed Watersheds**: Require further assessments and recommendations for watersheds to meeting TMDL goals.

(916.12)

**Group #4**

**Operational Requirements**

- **tractor crossings standards for riparian zones** (914.8)

- **logging operations in riparian zones and other upland areas** (916.9)**:** goals and standards contained in this section represent most substantive operational change requirements of all t/I rule amendments.

- **road and landings management practice** (923.3, 923.9)**:** established construction standards to accommodate life stage all life stages, sediment deposited movement, road width, road drainage, cuts and fills, steep road segments, and other low risk design structures and vurnerable watershed areas.  Regulations apply to both riparian areas and upland areas.

**Group #5**

**Monitoring**

- **monitoring and adaptive management** (916.11): established postharvest monitoring for operations in a WLPZ and in upland areas for monitoring roading.

---

**Appendix 4**

---

**Rule Review Time Frame**

**T/I Rule Review Schedule**                    Edited 3/12/08

| <u>Date</u> | <u>Activity</u> | | <u>Activity</u> |
|---|---|---|---|
| April 1, 2008 | 1st FPC: **Goals/Intent and Definitions** | | |
| May 5, 2008 | 1st Stakeholder:  **Goals/Intent and Definitions** | | |
| May 6, 2008 | 2nd FPC: **Goals/Intent** | | 1st FPC:  **Geo Scope and Plan Prep** |
| June 4, 2008 | 1st Stakeholder:  **Geo Scope and Plan Prep** | | |
| June 5, 2008 | 2nd FPC: **Geo Scope and Plan Prep** | | 1st FPC:  **Cumulative Impacts** |
| July 7, 2008 | 1st Stakeholder:  **Cumulative Impacts** | | |
| July 8, 2008 | 2nd FPC: **Cumulative Impacts** | | 1st FPC:  **Operational Requirements** |
| August 4, 2008 | 1st Stakeholder:  **Operational Requirements** | | |
| August 5, 2008 | 2nd FPC:  **Operational Requirements** | | |
| September 8, 2008 | 2nd Stakeholder:  **Operational Requirements** | | |
| September 9, 2008 | 3rd FPC: **Operational Requirements** | | |
| October 6, 2008 | 3rd Stakeholder:  **Operational Requirements** | | |
| October 7, 2008 | 4th FPC:  **Operational Requirements** | | 1st FPC: **Monitoring** |
| November 3, 2008 | 1st Stakeholder:  **Monitoring** | | |
| December 1, 2008 | 2nd FPC:  **Monitoring** | | |
| January FPC 09 | **Staff Present All Initial Recommendations from FPC** | | |
| February FPC 09 | **Committee Deliberations/Input to Staff** | | |
| March FPC 09 | **Staff Present edits** | | |
| April, 2009 | **Full Board Action on FPC final proposal** | | |

| Appendix 5 |
|:---:|

## Rule review criteria assignments

JJO
cz 3/14/2008

## T&I Rule Review Criteria Assignments

| Rule # | Title or Subject | Review Task or Issues | Needs Science Review | Other Technical Review (policy, costs, clarity, enforcement) | Assigned Review Group |
|---|---|---|:---:|:---:|---|
| § 895.1 | Definitions - | Do the definitions still apply to any changes to the rules? | N | Y | ALL |
| § 898 | Feasibility Alternatives | Is this still needed given the expanded role of RWQCB or should this substitute for waiver and WDR requirements? | N | Y | Forest Practices Committee |
| § 898.2 | Special Conditions Requiring Disapproval of Plans | Review for appropriate policy. | N | N | Forest Practices Committee |
| § 914.8 [934.8, 954.8] | Tractor Road Watercourse Crossing | Is the rule clear and are all class I streams included? (domestic water sources? | N | Y | Roads Task Force |
| § 916 [936, 956 | Intent of Watercourse and Lake Protection | Review for appropriate policy. | N | N | Forest Practices Committee |
| § 916.2 [936.2, 956.2] | Protection of the Beneficial Uses of Water and Riparian Functions | Review for appropriate policy. | N | N | Forest Practices Committee |
| § 916.9 [936.9, 956.9] | Protection and Restoration in Watersheds with Threatened or Impaired Values | | | | |

| | | | | | |
|---|---|---|---|---|---|
| (916.9 (a)) | · Establish goals that prevent deleterious interference with watershed conditions, including sediment load increases thermal load increases, losses of large woody debris, and substantial increases in peak flows. | Review for appropriate policy. | N | Y | Forest Practices Committee |
| (916.9 (a)) | · Establish standards for conduct including compliance with the sediment TMDLs, no measurable decrease in stability of channels, no blockage of migratory routes, no measurable stream flows reductions during water drafting, protection of snags and down logs in riparian zone, and vegetative canopies for shading. | Are these appropriate indicators of no significant impact to listed fisheries? | Y | N | Technical Advisory Committee |
| (916.9 (b)) | · Established minimum cumulative effect assessments requirements | Review based on new science or a better understanding of riparian function. | Y | Y | Technical Advisory Committee |
| (916.9 (c)) | · Stream course buffer widths and harvest restrictions | Review based on new science or a better understanding of riparian function. | Y | Y | Technical Advisory Committee |
| (916.9 (d)) | · Plan content for preferential measures for protection of beneficial use | Review for appropriate policy. | N | N | Forest Practices Committee |
| (916.9 (e)) | · Channel zone timber operations prohibitions | Review for appropriate policy. | N | Y | Technical Advisory Committee |
| (916.9 (f)) | · WLPZ width ) | Review based on new science or a better understanding of riparian function. | Y | Y | Technical Advisory Committee |
| ((916.9 (g)) | · Canopy covers | Review based on new science or a better understanding of riparian function. | Y | Y | Technical Advisory Committee |
| (916.9 (h)) | · Specifications and requirements for class one crossings) | Review based on new science or a better understanding of riparian function. | Y | Y | Roads Task Force |

| | | | | | |
|---|---|---|---|---|---|
| (916.9 (i)) | · Standards for recruitment of large woody debris | Review based on new science or a better understanding of riparian function. | Y | Y | Technical Advisory Committee |
| (916.9 (j)) | • Special management zones for inner gorges | Review based on new science or a better understanding of riparian function. | Y | Y | Technical Advisory Committee |
| (916.9 (k)) | • Winter period operations plans | Review for appropriate policy. | N | Y | ALL |
| (916.9 (l and m)) | · Logging in tractor Road, specifications and | Review for appropriate policy. | N | Y | Forest Practices Committee |
| 916.9 (n)). | · WLPZ soil erosion treatments | Are the the rules efficient and effective? | N | Y | Roads Task Force |
| 916.9 (o) | · Riparian zone, and upland active erosion site identification | Is this still needed given the expanded role of RWQCB or should this substitute for waiver and WDR requirments? | N | Y | Forest Practices Committee |
| (916.9 (p)) | · Erosion control, maintenance period | Review for appropriate policy. | N | Y | Forest Practices Committee |
| (916.9 (q)) | · Site preparation standards | Review for appropriate policy. | N | Y | Forest Practices Committee |
| (916.9 (r)) | · Water drafting standards | Review based on new science or a better understanding of riparian function. | Y | Y | Technical Advisory Committee |
| (916.9 (s)) | · Timber harvest limitations for exemption notices | Review based on new science or a better understanding of riparian function. | Y | Y | Forest Practices Committee |
| (916.9 (t) | · Timber harvest limitations for emergency notices) | Review based on new science or a better understanding of riparian function. | Y | Y | Forest Practices Committee |
| (916.9 (u)) | · Salvage harvesting requirements | Review based on new science or a better understanding of riparian function. | Y | Y | Forest Practices Committee |
| (916.9 (v,w, x)) | · Waivers, exceptions, alternatives ect requirements | Review based on new science or a better understanding of riparian function. | Y | Y | Forest Practices Committee |

| § | | | | | |
|---|---|---|---|---|---|
| (916.9 (y)) | | Exclusion of requirements for plans with HCP ITPs | Review for appropriate policy. | N | N | Forest Practices Committee |
| § 916.11 [936.11, 956.11] | | Effectiveness and Implementation Monitoring | Should the new Monitoring and Adaptive Management rules be substituted for this section? | N | Y | Forest Practices Committee |
| § 916.12 [936.12, 956.12 | | Section 303(d) Listed Watersheds | Is this still needed given the expanded role of RWQCB or should this substitute for waiver and WDR requirements? | N | Y | Forest Practices Committee |
| § 923.3 [943.3, 963.3] | | Watercourse Crossings | Are the rules efficient and effective? | Y | Y | ALL |
| § 923.9 [943.9, 963.9] | | Roads and Landings in Watersheds with Threatened or Impaired Values | Are the rules efficient and effective? | Y | Y | Roads Task Force |

End

1  JOHN H. FINDLEY, No. 50495
   E-mail:  jhf@pacificlegal.org
2  PAUL J. BEARD, No. 210563
   E-mail:  pjb@pacificlegal.org
3  DAMIEN M. SCHIFF, No. 235101
   E-mail:  dms@pacificlegal.org
4  Pacific Legal Foundation
   3900 Lennane Drive, Suite 200
5  Sacramento, California 95834
   Telephone:  (916) 419-7111
6  Facsimile:  (916) 419-7747

7  Attorneys for Plaintiff

8

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13  BARNUM TIMBER CO.,                      )   No. 3:08-cv-01988-WHA
                                            )
14          Plaintiff,                      )   **DECLARATION OF**
                                            )   **JAMES L. ABLE IN SUPPORT**
15      v.                                  )   **OF PLAINTIFF'S OPPOSITION**
                                            )   **TO DEFENDANTS'**
16  UNITED STATES ENVIRONMENTAL             )   **MOTION TO DISMISS**
    PROTECTION AGENCY; and STEPHEN L.       )
17  JOHNSON, in his official capacity as Administrator, )   Date:  September 25, 2008
                                            )   Time:  8:00 a.m.
18          Defendants.                     )   Courtroom 9, 19th Floor
                                            )   Judge:  Hon. William H. Alsup

19

20

21

22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA  95834
(916) 419-7111 FAX (916) 419-7747

I, James L. Able, declare as follows:

1. The facts set forth in this declaration are based on my personal knowledge and, if called as a witness, I could and would competently testify thereto under oath. As to those matters which reflect a matter of opinion, they reflect my personal opinion and judgment upon the matter.

2. I am a California Licensed Professional Forester (license number 900) and own my own forestry consultation company, James L. Able Forestry Consultants, Inc. As a professional forestry consulting company, we evaluate and manage timberlands, appraise forest land and timber, and provide advice on sales and purchases of land and timber to diverse clients. We also assist our clients with their procurement of needed federal, state, and county permits for activities related to logging, development, endangered species protection, and other types of wildlife permits that are specific to California. On a daily basis, I oversee various professionals, including licensed foresters and technical staff. Prior to my current employment, I managed, appraised, and negotiated the acquisition of redwood timberlands at Georgia Pacific and Louisiana Pacific Corporation. I also worked for two years with the U.S. Forest Service in California.

3. I hold a Bachelor of Science degree in Forestry and Range Management from Colorado State University. I have also taken course work in forest land and timber appraisal, real estate appraisal, law, silviculture, forest policy, logging engineering, timber tax law and forest mensuration (cruising)[1] at Duke University, Oregon State, Humboldt State, University of Nevada, and the College of the Redwoods. I belong to several professional organizations, including the Society of American Foresters, Association of Consulting Foresters, Forest Landowners of California, and the California Licensed Foresters Association. I am the director of the Buckeye Conservancy, sit on the Humboldt County Forest Advisory Committee, and am a Visiting Instructor at Humboldt State University.

4. With 42 years of experience as a private forest consultant, a forester for the timber industry and the U.S. Forest Service in northwestern California, and a California Licensed

---

[1] Cruise, cruising: "in forestry, to explore or examine forests to estimate the quantity and quality of timber to be cut therefrom." *Webster's New Twentieth Century Dictionary* 438 (2d edition, William Collins+World Publishing Co., Inc., 1977).

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

Professional Forester, I am acutely aware of the impact and effects on Barnum Timber Company as a result of the State Water Resources Control Board's (SWRCB) 303(d) listing of Redwood Creek, which is located in northwest California.

5.    I understand that the SWRCB has listed Redwood Creek as impaired for sediment and temperature. Although there are two different listings, the effects on Barnum Timber Company are quite similar. Due to the listings, the California Department of Forestry has designated Barnum Timber Company's property as Threatened and Impaired. Title 14 CCR 916.9, 936.9, 956.9. This negative designation forces Barnum Timber Company to undergo rigorous additional harvesting and timber growing restrictions than would be required without the designation.

6.    Specifically, Barnum Timber Company must implement and maintain wider buffer strips, also known as water course and lake protection zones (WLPZ), approximately 300 feet,[2] the size of a football field, around watercourses that either bear or could bear fish, as it is thought these strips reduce sedimentation in the water. Title 14 CCR 916.9(f). In reality these strips not only remove significant acreage from production but they also disrupt vital infrastructure, such as roads, landings, logging chances and access.

7.    There is also now in effect a requirement to retain more trees within the WLPZ areas than otherwise would be required to serve as canopy cover in order, it is thought, to reduce water temperature. Title 14 CCR 916.9(g). In reality the number of trees that Barnum Timber Company must retain to provide canopy is unrealistic. The Rule requires also that for each 300 feet of WLPZ, the 10 largest trees, which are often the most valuable trees, must be retained to supposedly protect against increased sediment and temperature. Not only does this cause the loss of value since these are often the most valuable trees, it increases operational costs. Moreover, a great deal of time and money must be spent to determine which of the thousands of trees are the 10 largest.

///

_____

[2] For intermittent streams (class II) the WLPZ area is 200 feet.

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

8.    Also, due to the listing of the property on the impaired list, additional time of year limitations have been implemented that have a restrictive impact on forestry operations, including the prohibition on harvesting salvage timber (blown down or dying trees) for possible sedimentation reduction within WLPZ areas. Title 14 CCR 916.9(t). These requirements increase costs and decrease marketing opportunities. Overall, these limitations (that are basically exclusions) to clearing areas for reforestation of conifer trees and the requirements of excessive canopy cover eliminate the use of the area for the effective growing of valuable conifer species.

9.    It is my opinion that these restrictions place undue and harmful burdens on Barnum Timber by restricting the immediate harvesting of timber, the planning of future harvests, restocking of buffer areas to more valuable conifer trees, creating zones of unmanageable land by limiting access, causing the development of new road construction to bypass the arbitrary WLPZ areas, increasing logging costs, causing delays of approval of logging permits that may affect the price Barnum Timber Company receives for the timber, and generally discouraging the use of the property for timber production. All of these negative effects, as a result of the SWRCB listing Redwood Creek as impaired for sediment and temperature, have reduced the value of Barnum Timber Company's property for timber management.

10.    In fact, these restrictions have caused Barnum Timber Company and others to sell property prematurely to get out of the timber business. Even though they may receive fair market value for a lesser "highest and best use" for their property, they feel the pressure to accept a lower price so they can get out. Growing timber on land that contains any streams that have been designated impaired under section 303(d) of the CWA just presents too many economic risks to the landowner.

11.    For the foregoing reasons, I believe that Barnum Timber Company now suffers from tremendous regulatory burdens imposed by California's Forest Practice Rules as a result of Redwood Creek's 303(d) listing as an impaired water. Not only has Barnum Timber Company's property been devalued as a result of the 303(d) listing of Redwood Creek, but the property has been further devalued by the imposition of Forest Practice Rules triggered by the impaired listing.

///

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747

1        I declare under penalty of perjury that the foregoing is true and correct and that this

2    declaration was executed this _7th_ day of August, 2008, at _Eureka, California_

3

4    _____
                              JAMES L. ABLE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
3900 Lennane Drive, Suite 200
Sacramento, CA 95834
(916) 419-7111 FAX (916) 419-7747