IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BARNUM TIMBER CO., a California
limited partnership,

    Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; and LISA P.
JACKSON, in her official capacity as
Administrator of the Environmental
Protection Agency,

    Defendants.
    /

No. C 08-01988 WHA

**ORDER GRANTING
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

## INTRODUCTION

In this environmental action, plaintiff and defendants each move for summary judgment on all three claims. For the reasons stated below, defendants' motion is **GRANTED**, and plaintiff's motion is **DENIED**.

## STATEMENT

The following facts are undisputed. Plaintiff Barnum Timber Company "owns and operates substantial nonindustrial timberlands and rangelands in Northern California, primarily in Humboldt County and the Redwood Creek watershed." Redwood Creek is a forested watershed comprising 280,000 acres located near Eureka in northwestern California. Plaintiff has owned 15,000 acres in the Redwood Creek basin since 1950, making it the second largest private landowner in the basin. (Barnum Decl. ¶ 4).

### 1. THE LISTING OF REDWOOD CREEK AS "IMPAIRED."

Pursuant to the Clean Water Act, all states are required to identify the bodies of water within their boundaries that are impaired by effluent or thermal pollution. 33 U.S.C. 1313(d)(1). "Impairment" means water quality objectives are not being met or beneficial uses are not being supported. Each water body that is impaired is placed on a "Section 303(d) list" — referring to Section 303 of the Clean Water Act — and that list is periodically submitted to the EPA for approval. For those water bodies on the list, the state is further required to establish a total maximum daily load for each pollutant impairing a body of water. 33 U.S.C. 1313(d)(1). A TMDL determines the amount of a pollutant which can be introduced in the water without exceeding water-quality standards. 40 C.F.R. 130.7. The state's completed Section 303(d) list is then periodically submitted to the EPA, which can approve or disapprove the list. 33 U.S.C. 1313(d)(2). The extent to which the EPA is required to review the Section 303(d) lists is the subject of this dispute.

California added Redwood Creek to its Section 303(d) list in 1992 due to impairment by sediment (AR 3569). The EPA, pursuant to a consent decree, established a TMDL for Redwood Creek for sediment in 1998 (AR 3568). In 2001, as part of the state's regular reassessment of its Section 303(d) list, the North Coast Regional Water Quality Control Board recommended to the State Water Resources Control Board to retain Redwood Creek on the impaired list as sediment-impaired and add it to the list as temperature-impaired (AR 4310; *see also* North Coast Region Water Quality Control Board 303(d) List Update Recommendations (Nov. 16, 2001), http://www.swrcb.ca.gov/water_issues/ programs/tmdl/docs/303d_policydocs/266.pdf, at 16–17, 28–31). The North Coast Board's "303(d) List Update Recommendations" indicated that "high temperature levels may be a source of impairment of cold water fisheries in the river." Data taken from 31 locations indicated that the maximum weekly average temperature values at ten locations "exceeded the upper end of the range of [maximum weekly average temperature] criteria (17 °C) for sub-lethal effects (10% reduced growth) on juvenile salmonids." Twenty percent reduced growth on juvenile salmonids was indicated by data in other locations (*ibid.*).

The State Water Board then decided to include Redwood Creek on its 2002 Section 303(d) list as a temperature-impaired and sediment-impaired body of water (AR 355). California then provided its Section 303(d) submission to the EPA, and the portion pertaining to Redwood Creek was approved in 2003 (AR 355). In 2006, California submitted its 2004–2006 Section 303(d) list to the EPA, which included Redwood Creek on the list of water-quality limited segments for temperature-impairment and on the list of water-quality limited segments being addressed by an EPA-approved TMDL for sediment-impairment (AR 162, 188). The EPA approved the inclusion of Redwood Creek (AR 1).

### 2. THE 2008–2010 SECTION 303(d) LIST.

As part of the next cycle of the listing process, the State Board adopted a proposed Section 303(d) list in 2010, and submitted it to the EPA (AR 3895). Before California submitted the list to the EPA, the North Coast Board solicited water-quality information from the public, responded to comments from the public, and held a public hearing before making its recommendations to the state (AR 3991, 4001, 4309–11). The State Board then issued its draft of the list for public comment before forwarding its "California 2010 Integrated Report" to the EPA (AR 3896).

The 2010 list once again included Redwood Creek as impaired by sediment and temperature. The sediment listing stated that the pollutant was being addressed by an approved TMDL (AR 3896–98; 3912–13). The EPA approved the 2008–2010 list as it pertained to Redwood Creek, stating: "EPA is . . . acting today to approve the State's inclusion of all waters and pollutants that the State identified as requiring a TMDL" (AR 3869). The parties dispute whether the EPA approved the listing of Redwood Creek as sediment-impaired at that time because it was not identified as requiring a TMDL, as one was already in place. The EPA provided a 23-page rationale for its decision in addition to its approval letter (AR 3869–93). In reaching its decision, the EPA claimed that "the State's listing decisions, assessment methodology, and supporting data and information" were carefully considered (AR 3869).

### 3. EVIDENCE SUBMITTED DURING THE SECTION 303(D) LISTING REVIEW PROCESS BY PLAINTIFF.

During the 2002, 2006, and 2010 listing cycles, plaintiff participated in the public comment process by providing the North Coast Board and the State Board with information and testimony regarding Redwood Creek. Plaintiff submitted multiple items, but emphasizes scientific report titled *A Study in Change: Redwood Creek and Salmon* and raw data on the salmonid population (Barnum Exhs. 1–3). Plaintiff argues that the data it submitted show that the quality of habitat is "sufficient to support young salmonids at levels fully consistent with strong, healthy, and natural production levels" and that "Redwood Creek's sedimentation and temperature levels are consistent with historical levels and that the Creek is in as good condition now as it was before modern human interaction" (Br. 5).

### 4. PROCEDURAL HISTORY.

Plaintiff commenced this action in 2008 under the Administrative Procedure Act, challenging the EPA's approval of the 2004–2006 Section 303(d) list pursuant to the Clean Water Act (Dkt. No. 1). EPA then moved to dismiss the complaint for lack of standing, contending that plaintiff failed to show an injury that was traceable to the EPA and redressable by the courts (Dkt. No. 9). The motion was granted, and plaintiff moved for leave to file an amended complaint (Dkt. Nos. 27–28). The motion for leave to file an amended complaint was denied because the declarations attached to the proposed amended complaint did not cure the standing deficiencies (Dkt. No. 33). On appeal, however, the United States Court of Appeals for the Ninth Circuit reversed and remanded, finding that plaintiff was able to demonstrate it had Article III standing through the use of the attached declarations. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901–02 (9th Cir. 2011).

In May 2011, plaintiff filed its second amended complaint against the EPA and Lisa P. Jackson, in her official capacity as administrator of the EPA, for declaratory and injunctive relief, challenging defendants' approval of the 2008–2010 Section 303(d) list (Dkt. No. 53). Plaintiff alleges three claims for relief: (1) violations of Section 1313(d) and Section 706 of the APA due to defendant's arbitrary and capricious inclusion of Redwood Creek on the 2010

4

Section 303(d) list as impaired; (2) violations of Section 1313(d) and Section 706 due to defendant's arbitrary and capricious inclusion of Redwood Creek on the 2010 Section 303(d) list as impaired by sediment; and (3) violations of Section 1313(d) and Section 706 due to defendant's arbitrary and capricious inclusion of Redwood Creek on the 2010 Section 303(d) list as impaired by temperature (Dkt. No. 53).

Both sides now move for summary judgment on all three claims (Dkt. Nos. 57–58). This order follows full briefing and a hearing.

**ANALYSIS**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). In this analysis, all reasonable inferences must be drawn in the light most favorable to the non-moving party. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010). Unsupported conjecture or conclusory statements, however, cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *Id.* at 1102–03.

1.     **STANDING.**

Defendants first argue that plaintiff does not have standing at this stage of the litigation. Defendants concede plaintiff was able to show standing at the pleading stage using declarations but contend that is no longer sufficient to show standing for a motion for summary judgment (Br. 12). Specifically, defendants maintain that plaintiff is unable to show injury-in-fact, causal connection, and redressability. Not so.

Our court of appeals found that declarations submitted by plaintiff were enough to prove that "Barnum has standing as a landowner whose property values are adversely impacted to challenge EPA's retention of Redwood Creek." *Barnum Timber Co. v. EPA*, 633 F.3d 894, 895 (9th Cir. 2011). So too here. Barnum submits the same declarations, which the court held was enough in the above decision, as evidence for this motion and adds a declaration of Robert C. Barnum also in support of the motion. The three declarations demonstrate plaintiff meets all three elements of Article III standing as discussed further in *Barnum Timber*, 633 F.3d at 897–902.

2.     **EPA'S AFFIRMATION OF CALIFORNIA'S SECTION 303(d) LIST.**

All three of plaintiff's claims challenge defendants' approval of the 2008–2010 Section 303(d) list as arbitrary and capricious because: (1) the decision was not supported by substantial evidence, and (2) the decision to retain Redwood Creek on the list unreasonably discounted evidence submitted by plaintiff, which allegedly demonstrated that Redwood Creek should be removed from the Section 303(d) list. Plaintiff's first claim challenges the inclusion of Redwood Creek on the list as impaired, the second challenges the inclusion of Redwood Creek as impaired by sediment, and the third challenges the inclusion of Redwood Creek as impaired by temperature. Thus, all of plaintiff's claims rest on the same assertion — that defendants wrongly approved California's Section 303(d) list including Redwood Creek in 2010.

Plaintiff alleges that "EPA is under a clear and present duty to list, and to enforce TMDLs for, only those waters which there has been submitted to the record sufficient competent evidence of impairment of beneficial use" (Sec. Amd. Compl. ¶¶ 58, 68, 78). Plaintiff also asserts a clear, present, legal right to defendants' performance of that duty and alleges the EPA

6

1 acted arbitrarily and capriciously, and contrary to law, by retaining Redwood Creek on the
2 Section 303(d) list of impaired water bodies. This order, however, finds that defendants
3 acted within the scope of their statutory and regulatory authority in approving California's
4 Section 303(d) list.

### A. Standard of Review for EPA Decision.

The general standard of review for an agency action under the APA allows for an agency's action to be held unlawful and set aside by a reviewing court if the agency's findings are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. 706(2)(A). The context of the Clean Water Act and the EPA's involvement in its implementation provides greater clarity to this standard.

The Clean Water Act delegated to the EPA the general authority necessary for it to carry out its functions under the Act. 33 U.S.C. 1361(a). One of these functions is the EPA's approval or disapproval of the Section 303(d) list. A reviewing court should not simply substitute its own judgment for that of an agency because "Congress entrusted to the EPA the responsibility of approving or disapproving the § 303(d)(1) lists, bestowing upon it the discretion that comes with such responsibility." *Pronsolino v. Nastri,* 291 F.3d 1123, 1134 (9th Cir. 2002). The standard of review applying to an agency decision, such as the EPA's approval of the Section 303(d) list under the Clean Water Act, has been further expounded upon by our court of appeals:

> [W]e will reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Greater Yellowstone Coal. v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010), as amended (Jan. 25, 2011) (citation omitted). The agency should articulate a "rational connection between the facts found and the choice made," but "[t]he APA does not give this court power to substitute its judgment for that of the agency but only to consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Vigil v. Leavitt*, 381 F.3d 826, 833 (9th Cir. 2004); *Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1521 (9th Cir. 1995) (internal quotations omitted).

Furthermore, "agencies have discretion to rely on their own experts' reasonable opinions to resolve a conflict between or among specialists, even if [a reviewing court] find[s] contrary views more persuasive." *Greater Yellowstone,* 628 F.3d at 1148. "[W]here, as here, a court reviews an agency action involv[ing] primarily issues of fact, and where analysis of the relevant documents requires a high level of technical expertise, we must defer to the informed discretion of the responsible federal agencies." *Vigil*, 381 F.3d at 833 (internal quotations omitted). Even when an agency explains its decisions with "less than ideal clarity," a reviewing court will not overturn the decisions "if the agency's path may be reasonable discerned." *Ibid.* Some courts have also wavered between applying *Chevron* deference to the EPA's decisions versus the lesser *Skidmore* deference, but found that it was unnecessary to decide on the facts in front of them which level of deference should apply to such an agency decision. *See, e.g., Pronsolino*, 291 F.3d at 1133; *Vigil*, 381 F.3d at 835. So too here. The result would not change under either standard of deference.

**B.  Evidence in the Record in Support of Defendants' Decision.**

Plaintiff contends defendants acted arbitrarily and capriciously in retaining Redwood Creek on the Section 303(d) list because "EPA's record contains no competent evidence — let alone substantial evidence — that Redwood Creek is an impaired body" (Br. 6). In support of its claim, plaintiff asserts "EPA's role is to review the legal adequacy, not just of the state's process in arriving at the listing decision, but of the evidentiary grounds for that decision as well" (Reply Br. 4). Because there was a lack of evidence supporting the state's decision to list Redwood Creek, defendants allegedly erred when they merely "acquiesced" to that decision.

*(1)  Evidence of Temperature-Impairment.*

Plaintiff first objects to the state's use of a threshold maximum weekly average temperature of eighteen degrees Celsius for all water bodies in the Pacific Northwest (AR 3897). Plaintiff argues that because the maximum weekly average temperature used included Washington, Oregon, and other states where waters are colder, Redwood Creek exceeding that temperature reflects natural differences in water body temperatures and not impairment. Moreover, plaintiff contends that there is no evidence in the record as to what the historic

8

temperature baseline is for Redwood Creek (Br. 7). Plaintiff finds fault with the fact that defendants approved the inclusion of Redwood Creek as temperature-impaired "without substantial evidence to support that finding."

The applicable regulations provide that the Administrator of the EPA shall either approve or disapprove the states' listings no later than 30 days after the date it is submitted by the state. 40 C.F.R. 130.7(d)(2). Each state shall provide documentation to support its decision to list or not to list its waters on the Section 303(d) list. The documentation should include at a minimum: (1) a description of the methodology used to develop the list; (2) a description of the data and information used to identify waters; (3) a rationale for any decision not to use any existing and readily available data and information for any one of the categories of waters; and (4) any other reasonable information requested by the Administrator. 40 C.F.R. 130.7(b)(6)(i)–(iv). Based on this, plaintiff contends defendants are "obligated to assess the substantive adequacy of those decisions" (Reply Br. 5).

Defendants disagree with plaintiff's assessment and argue that their role is one of oversight, leaving to the states the primary responsibility to identify the waters to be included on their Section 303(d) lists. Because California complied with the EPA and the Clean Water Act in its listing process, including collecting and reviewing data, holding hearings and documenting its decisions, defendants contend that they acted reasonably in approving the submission. This order agrees with defendants' description of their proper role in the process.

Although our court of appeals has not specifically defined EPA's role in the Section 303(d) listing process, defendants note that the 30-day limitation on their review process demonstrates that their "role is one of mere oversight" (Br. 18). Other circuits agree. Considering the EPA's approval of water quality standards, the United States Court of Appeals for the Tenth Circuit stated, "the time restriction for the EPA's review of state . . . water quality standards supports our conclusion that Congress intended the EPA to have a very limited role." *City of Albuquerque v. Browner*, 97 F.3d 415, 425 (10th Cir. 1996). Another circuit found the "primary responsibility for establishing appropriate water quality standards is left to the states," meaning that the "EPA sits in a reviewing capacity of the state-implemented standards, with

1  approval and rejection powers only." *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395,
2  1399 (4th Cir. 1993). Our court of appeals has taken a similar position with respect to a state's
3  role in the process. *City of Arcadia v. EPA*, 411 F.3d 1103, 1106 (9th Cir. 2001) (finding that
4  a plain reading of Section 1313 is "consistent with the basic goals and policies that underlie
5  the Clean Water Act — namely, that states remain at the front line in combating pollution").
6  Finally, "[a] court should accept the 'reasonable' interpretation of a statute chosen by an
7  administrative agency except when it is clearly contrary to the intent of Congress." *Dioxin*,
8  57 F.3d at 1525. The EPA's limited role is thus evidenced by the wording of the regulations,
9  the decisions of the courts, and the interpretation of the requirements by the EPA.

10  The EPA stated that its review was "based on its analysis of whether the State reasonably
11  considered existing and readily available water quality-related data and information and
12  reasonably identified waters required to be listed" (AR 3873). The Final California 2010
13  Integrated Report, submitted to defendants for review, detailed Redwood Creek's inclusion
14  for temperature-impairment (AR 3896). It even explained at length why the particular maximum
15  weekly average temperature now objected to by plaintiff was chosen (AR 3897–98). California
16  considered removing Redwood Creek from its list but found that the evidence supported its
17  continued listing (AR 3896–97):

> The evidence demonstrates that the temperature water quality objective is not attained in Redwood Creek. Water temperatures do not reflect natural conditions as the environmental factors that influence water temperature have been altered by human activities. For example, there is loss of shade provided by large conifers as a result of timber harvest and stream bank erosion. Additionally, water temperatures in Redwood Creek adversely affect beneficial uses. When compared to the 18ºC [maximum weekly maximum temperature] evaluation guideline for non-core juvenile salmon and trout rearing . . . all 5 of the 5 [maximum weekly maximum temperature] values calculated for Redwood Creek from 2001 to 2005 exceed the evaluation guideline.

California concluded, "[b]ased on the readily available data and information, the weight of the evidence indicates that there is sufficient justification to not remove this water segment-pollutant combination from the Section 303(d) List" (AR 3896).

This order finds that California's decision was based on ample evidence and a process that complied with the regulations and the Clean Water Act. Defendants acted reasonably in

10

1  approving the retention of Redwood Creek on the list given their role, their discretion, and the
2  fact that the state plays the larger role in the identification of impaired waters. Defendants did
3  not act arbitrarily or capriciously, as defined in *Greater Yellowstone*, 628 F.3d at 1148, in their
4  decision.

### (2) *Evidence of Sediment-Impairment.*

Plaintiff further contends that there is insufficient evidence in the record to support the retention of Redwood Creek as sediment-impaired. Plaintiff argues that there is no scientific data or other evidence concerning sediment-impairment, and "Redwood Creek's listing as sediment-impaired is based exclusively on the unsubstantiated and unscientific opinions and speculation of the American Fisheries Society members and the United States Fish and Wildlife Service. *See, e.g.,* EPA 4310" (Br. 7–8).

In the 2008 integrated report, the North Coast Board found that sediment conditions in Redwood Creek did not attain water-quality objectives (AR 4310). The 2008 list included Redwood Creek on the list in the section of water bodies being addressed by EPA-approved TMDLs. It is undisputed that a TMDL was established for sediment in Redwood Creek in 1998 and finalized no later than 2004 (Br. 4; AR 410). The Final 2010 California Integrated Report stated, "[b]ased on the readily available information, the weight of the evidence indicates that there is sufficient justification in favor of placing this water segment-pollutant combination in the Water Quality Limited Segments Being Addressed portion of the Section 303(d) List" (EPA 3912).

Because it is undisputed that a TMDL was established for sediment in Redwood Creek and the 2008–2010 list merely retained Redwood Creek as a water body being addressed by a TMDL, defendants cannot be said to have acted arbitrarily and capriciously in approving the Section 303(d) listing. A TMDL was established and defendants affirmed this fact.

### C. Inclusion of Plaintiff's Evidence.

Finally, plaintiff argues that defendants arbitrarily and capriciously failed to "consider fully Barnum's submissions of comments and supporting evidence establishing the creek's ineligibility for Section 303(d) listing" (Br. 8). Plaintiff identifies numerous materials it

11

1  submitted during the hearing cycles for the listing of Redwood Creek that it believes clearly
2  establish that Redwood Creek should be removed from the Section 303(d) list.  Plaintiff finds
3  fault with the fact that this material was not submitted by the state to defendants for their review
4  of the Section 303(d) list.

5       Plaintiff misunderstands defendants' role in the review process.  Section 130.7 of the
6  Code of Federal Regulations requires each state to "provide documentation to the Regional
7  Administrator [of the EPA] to support the State's determination to list or not to list its waters."
8  This documentation must include four things:  (1) a description of the methodology used to
9  develop the list; (2) a *description of the data and information used* to identify waters; (3) *a*
10 *rationale for any decision not to use any existing and readily available data and information*
11 for any one of the categories of waters; and (4) any other reasonable information requested by
12 the Regional Administrator.  40 C.F.R. 130.7(b)(6)(i)–(iv) (emphasis added).

13      There is no requirement that the state forward to the EPA all evidence submitted
14 to it regarding a body of water.  That the state need not forward all materials it relied upon
15 substantially weakens plaintiff's argument that the EPA must do a complete review of all
16 grounds for the state's decision to list a body of water.  A state must only send a "description
17 of the data" used to identify the waters and a "rationale" for any decision not to use readily
18 available data and information applying to any listing.  Plaintiff points to the fact that defendants
19 can request any other reasonable information, knew of the Barnum information because it was
20 referenced in the materials it did receive, and failed to request all of the Barnum commentary
21 on Redwood Creek for their own review.  Plaintiff argues that this failure rendered defendants'
22 decision arbitrary and capricious.  Not so.  The arbitrary and capricious standard considers
23 whether an agency relied on "factors Congress did not intend it to consider, entirely failed to
24 consider an important aspect of the problem, or offered an explanation that runs counter to
25 the evidence . . . or is so implausible that it could not be ascribed to a difference in view or the
26 product of agency expertise," and none of these were done here.  *Greater Yellowstone*, 628 F.3d
27 at 1148
28

The evidence further demonstrates that plaintiff's comments were included and sufficiently responded to by the North Coast Board. Plaintiff identified the presence of salmonids being produced in Redwood Creek as evidence that it is not impaired by either temperature or sediment. The North Coast Board disagreed stating, "[t]he presence of salmonids in Redwood Creek does not equal water quality standard attainment" (AR 4309–10). Plaintiff also disputed the amount of evidence demonstrating Redwood Creek's impairment due to sediment, arguing that there was not enough evidence to support Redwood Creek's continued listing. The North Coast Board responded that available data and information leads to the conclusion that "existing sediment load in the Redwood Creek watershed present a continued threat to beneficial uses," and the Board even identified several beneficial uses threatened. "The TMDL confirmed that Redwood Creek is impaired by sediment" (AR4310).

Plaintiff also complained that the maximum weekly average temperature being used to include Redwood Creek and impaired by temperature was not accurate as to any actual baseline temperature in Redwood Creek. The North Coast Board responded that the "methodology used to determine temperature impairment was appropriately applied to Redwood Creek" (AR 4311). The Board "reviewed the data submitted by Barnum" and determined that "Redwood Creek remains impaired by temperature" (AR 4311). Accordingly, the Board received the data from plaintiff, reviewed the data, submitted reasons for not using or discounting some of plaintiff's data, and gave other evidence greater weight as it is allowed to do. Defendants were only required to review this process — not all of the actual data itself. Thus, defendants' decision was neither arbitrary nor capricious.

Because this order finds that defendants did not act arbitrarily and capriciously in their approval of California's Section 303(d) list, it does not reach defendants' arguments relating to plaintiff's available remedies.

**CONCLUSION**

For the reasons set forth above, defendants' motion for summary judgment is **GRANTED**, and plaintiff's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 15, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE